43 F.3d 1251
 129 Lab.Cas. P 33,188
 Ubaldo BARAJAS, Tito Peneda Davila, Alberto Media, and Ramon
Murillo, individually and on behalf of others
similarly situated, Plaintiffs-Appellants,
v.
Elias BERMUDEZ and Dora Bermudez; Natalia Medina; Jesus
Jose Bermudez, Marcos J. Flores, husband,
Enriqueta Bermudez Flores, wife and
Albert S. Medina; Centro de
Progreso,
Defendants-Appellees.
 No. 92-17030.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 14, 1994.
Decided Dec. 23, 1994.
 
 David Alan Dick, Larry Ruhl, and Hannah E.M. Lieberman, Community Legal Services, Inc., Tolleson, AZ, for plaintiffs-appellants.
 Elias Bermudez, Natalia Medina, Jesus Jose Bermudez, Centro de Progreso, pro se and for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before: D.W. NELSON and BEEZER, Circuit Judges, and LETTS,* District Judge.
 Opinion by Judge D.W. NELSON; Dissent by Judge BEEZER.
 D.W. NELSON, Circuit Judge:
 
 
 1
 Plaintiffs, seasonal agricultural workers, appeal the district court's dismissal of their complaint, which alleges violations of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. Sec. 1801 et seq. ("AWPA" or "the Act"). The district court borrowed Arizona's one-year statute of limitations for liabilities created by statute and held that plaintiffs' action was untimely. We have jurisdiction under 28 U.S.C. Sec. 1291, and we reverse.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 This action was brought in federal district court on February 18, 1992 by seasonal agricultural workers who had been employed by Taplett North Orchards during the autumn of 1989. Plaintiffs seek declaratory and injunctive relief and damages under the AWPA, the Fair Labor Standards Act, and general contract principles. This appeal concerns only plaintiffs' claims under the AWPA.
 
 
 3
 The AWPA is the successor statute to the Federal Farm Labor Contractor Registration Act, 7 U.S.C. Secs. 2041-2053 ("FLCRA") (enacted in 1974). The FLCRA was "the first major federal effort to improve the lot of agricultural laborers who 'have long been among the most exploited groups in the American labor force.' " Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1505 (11th Cir.1993) (quoting S.Rep. No. 93-1295, 93d Cong., 2d Sess. 1-3 (1974), reprinted in 1974 U.S.C.C.A.N. 6441, 6441-43); see also De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 229 (7th Cir.1983). As one commentator emphasized, passage of the FLCRA was motivated by congressional recognition that "[b]ecause of [a] virtually insurmountable wall of economic, social, educational, language, and cultural barriers facing [most migrant and seasonal agricultural workers,] their reliance upon [the farm labor] contractor is extraordinarily heavy, and in many cases, total." W. Gary Vause, The Farm Labor Contractor Registration Act, 11 Stetson L.Rev. 185, 198 (1982) (quoted in Caro-Galvan, 993 F.2d at 1505-06).
 
 
 4
 In 1983, Congress replaced the FLCRA with the AWPA, seeking to redress perceived shortcomings in the implementation of the substantive provisions of the FLCRA.[1] The policy objectives of the new statute were identical to those of the FLCRA, and Congress emphasized in passing the new bill that its primary concern was to ensure more effective implementation of those objectives. See, e.g., H.R.Rep. No. 97-885, 97th Cong., 2d Sess. 16, reprinted in U.S.C.C.A.N. 4547, 4550 (1982) (hereinafter, "House Report") (noting the failures of the FLCRA and emphasizing the "desperate[ ] need" for redoubled efforts to enforce the protections originally embodied in the FLCRA); see also House Report at 4548 ("[e]vidence ... confirms that migrant and seasonal agricultural workers remain today, as in the past, the most abused of all workers in the United States").
 
 
 5
 The AWPA imposes a variety of requirements on employers and recruiters of migrant and seasonal agricultural workers. The central protections for workers are set forth in the "Wages, Supplies, and Other Working Arrangements" provisions of the Act, 29 U.S.C. Sec. 1822 (applicable to employers using migrant workers) and Sec. 1832 (applicable to employers using seasonal workers), and in the "Information and Recordkeeping Requirements" provisions of the Act, id., Sec. 1821 (applicable to employers using migrant workers) and Sec. 1831 (applicable to employers using seasonal workers). In addition, the Act imposes health and safety requirements relating to housing, id., Sec. 1823, and motor vehicle transportation, id., Sec. 1841. Finally, the Act provides a private right of action for "[a]ny person aggrieved by a violation of this chapter or any regulation under this chapter." Id., Sec. 1854(a). The AWPA does not, however, contain a limitations period within which aggrieved parties must bring their actions.
 
 
 6
 Plaintiffs allege that Taplett North Orchards and the agents at Centro de Progreso who recruited them for employment at Taplett (collectively, "the employers") violated the AWPA by failing to comply with the terms and conditions of employment. Specifically, they allege that the employers violated the "Wages, Supplies, and Other Working Arrangements" provisions of the AWPA by failing to pay them the promised rate of $11.00 per bin or $3.35 per hour, by failing to provide return transportation after the end of their period of employment, and by failing to pay their wages when due. They also allege that the employers violated the "Information and Recordkeeping Requirements" provisions of the Act by knowingly providing false and misleading information concerning wage rates and other terms of employment.
 
 
 7
 Certain defendants moved to dismiss the complaint,[2] arguing that the AWPA claims were barred by Arizona's one-year statute of limitations for liabilities created by statute based on our decision in Rivera v. Anaya, 726 F.2d 564 (9th Cir.1984). In Rivera, the plaintiffs had brought claims alleging violations of the "registration, disclosure, recordkeeping, and posting" provisions of the FLCRA. Like the AWPA, the FLCRA lacked an explicit limitations provision. We first stated that, in the absence of a congressionally-mandated limitations period, the appropriate period should be determined by reference to state law. We further held that, under California law, the limitations period for a claim alleging violations of "registration, disclosure, recordkeeping, and posting" requirements would be that for "[a]n action upon a liability created by statute, other than a penalty or forfeiture." Id. at 569 (citing Cal.Civ.Pro. 338(1) (West 1982)). Rivera arose in California, where the statute of limitations for such a claim is three years. Under Arizona law, the statute of limitations for such a claim is one year. See A.R.S. Sec. 12-541(3) (providing that an action "[u]pon a liability created by statute, other than a penalty or forfeiture," must be brought within one year).
 
 
 8
 Although the present action arose in Arizona rather than California and the plaintiffs here rely primarily on the "Working Arrangements" provisions of the AWPA whereas the plaintiffs in Rivera relied exclusively on the FLCRA's disclosure and "Information and Recordkeeping" provisions, the district court ruled that Rivera was controlling and dismissed the suit under Fed.R.Civ.P. 12(b)(6). The court reasoned that the plaintiff's claims were barred because A.R.S. Sec. 12-541(3), the Arizona equivalent of the California statute relied on in Rivera, contains a one-year limitations period. The court did not consider the potential applicability of Arizona provisions other than A.R.S. Sec. 12-541(3).
 
 II. STANDARD OF REVIEW
 
 9
 We review de novo the district court's dismissal of plaintiffs' claims under Rule 12(b)(6). Oscar v. University Students Coop. Ass'n, 965 F.2d 783, 785 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).
 
 III. DISCUSSION
 
 10
 The AWPA does not include a statute of limitations. "It is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court 'borrows' or 'absorbs' the local time limitation most analogous to the case at hand."[3] Lampf v. Gilbertson, 501 U.S. 350, 355, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321 (1991) (internal citations omitted).
 
 
 11
 The Supreme Court has offered a general framework for ascertaining the appropriate limitations period for claims under a federal statute when Congress has not supplied one. "[T]he initial inquiry is whether all claims arising out of the federal statute 'should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case.' " Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 147, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987) (quoting Wilson v. Garcia, 471 U.S. 261, 268, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985)).
 
 
 12
 If the court determines that Congress intended a uniform characterization, "the next inquiry is whether a federal or state statute of limitations should be used." Id. If, however, the court determines that Congress did not intend a uniform characterization, the court should look to the facts and legal theories presented in the case before it, characterize the essence of the claim in the pending case, and borrow the limitations period of the state statute that provides the most closely analogous cause of action. See Wilson, 471 U.S. at 268, 105 S.Ct. at 1942-43. In no circumstance, however, should a court adopt a limitation period that would frustrate the policies of the federal statute. See, e.g., Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977) ("State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies.").
 
 
 13
 A. The Proper Characterization of AWPA Claims for State Law Borrowing Purposes
 
 
 14
 Our first task is to determine whether a single characterization of all claims under the AWPA is mandated by the statute.[4] The Supreme Court has interpreted federal statutes lacking limitation periods to require a uniform borrowing rule only on rare occasions.
 
 
 15
 In a number of cases, the Court has mandated adoption of a uniform limitations period from another federal statute. See, e.g., DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) (adopting six-month statute of limitations contained in section 10(b) of the National Labor Relations Act for employee claims against unions alleging breach of collective bargaining agreements); Agency Holding Corp. v. Malley-Duff & Assocs. Inc., 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (adopting four-year statute of limitations contained in Clayton Act for RICO civil enforcement actions). The Court has emphasized, however, that such an approach is proper only "when a rule from elsewhere in federal law clearly provides a closer analogy than available state law statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." Reed v. United Transp. Union, 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). In the present case, the appellants have not suggested that another federal statute "clearly provides a closer analogy than available state law statutes," and we are not aware of one.
 
 
 16
 The Supreme Court also has interpreted federal statutes lacking limitations periods to require adoption of a uniform state law borrowing source. See Wilson, 471 U.S. at 276, 105 S.Ct. at 1947 (holding that Congress intended courts to adopt a single state law source for claims under 42 U.S.C. Sec. 1983); Reed, 488 U.S. at 324, 109 S.Ct. at 625 (holding that Congress intended courts to adopt a single state law source for claims under 29 U.S.C. Sec. 411(a)(2)). In reaching this result in those cases, the Supreme Court first analyzed closely the text and legislative histories of the statutes in issue for indication of congressional intent. Additionally, the Court examined the range of potential claims that could have been brought under the statutes.[5]
 
 
 17
 In Rivera, however, we did not engage in such an analysis. Instead, we characterized the claim before us in state law terms and applied the California provision governing actions most directly analogous to the plaintiff's action under the disclosure and recordkeeping provisions of the AWPA.[6] Although we did not consider expressly in Rivera whether Congress intended a uniform characterization of AWPA claims, our approach assumes the absence of any such intent.
 
 
 18
 In addition, we note that the AWPA contains none of the indices of congressional intent that the Supreme Court deemed decisive in Wilson and Reed. Unlike 42 U.S.C. Sec. 1983, the AWPA does not contain an express directive to give preeminence to federal law; unlike the federal statutory provision at issue in Reed, the AWPA does not have as its "core purpose" the protection of constitutional values in an arena traditionally the domain of federal law. Although the AWPA encompasses requirements relating to information and recordkeeping, worker health and safety, as well as enforcement of contractual working arrangements, the difficulty of characterizing any particular AWPA action in state law terms is in no way comparable to the difficulties of characterization in the Sec. 1983 context. Prior to concluding that case-by-case characterization of Sec. 1983 claims could lead to a morass of secondary litigation "foreign to the central purposes of Sec. 1983," id. at 272, 105 S.Ct. at 1945, the Wilson Court emphasized the broad diversity of claims that had been litigated under the provision, noting that "[a] catalog of ... constitutional claims that have been alleged under Sec. 1983 would encompass numerous and diverse topics and subtopics." Comparable dangers are not present in the AWPA context.
 
 
 19
 In sum, we find no indication that Congress intended that courts adopt a uniform state law borrowing source for AWPA actions, and Rivera does not so hold. Cf. United Auto. Workers, 383 U.S. at 705 n. 7, 86 S.Ct. at 1113 n. 7 (1966) (applying Indiana's six-year statute of limitations for contracts not in writing to an action brought under Sec. 301 of the Labor Management Relations Act, but expressly reserving judgment on whether other Sec. 301 suits "different from the present one might call for the application of other rules on timeliness"); Dreher v. Amphitheater Unified Sch. Dist., 22 F.3d 228, 232 (9th Cir.1994) (applying Arizona's one-year statute of limitations contained in A.R.S. Sec. 12-541 to plaintiffs' action under the Individuals with Disabilities Education Act, 20 U.S.C. Sec. 1415(e), but noting that "under other circumstances" a different borrowing source might be appropriate for a claim under the same federal provision).
 
 
 20
 B. Characterizing the "Essence" of the Plaintiffs' Action in State Law Terms
 
 
 21
 Having determined that there is no indication that Congress intended that courts uniformly characterize AWPA claims for state law borrowing purposes, we must examine the factual circumstances and legal theories presented in this case in order to determine an appropriate limitations period. We begin by characterizing the "essence" of the particular federal statutory claim raised here in state law terms. Felton v. Unisource Corp., 940 F.2d 503, 510 (9th Cir.1991). We then select the state limitations period for the most analogous state law cause of action. Id. at 510-12. In doing so, we "accept[ ] the state's interpretation of its own statutes of limitations, but determine[ ] for [ourselves] the nature of the right conferred by the federal statute." Smith v. Cremins, 308 F.2d 187, 189 (9th Cir.1962), overruled on other grounds, Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).
 
 
 22
 As indicated above, the AWPA is broad enough to encompass more than one state law cause of action. A claim brought exclusively under the recordkeeping provisions of the Act would not easily be analogized to any common law cause of action and, in the absence of a precise state statutory analogue, application of the limitations period contained in state law provisions governing "liability created by statute" might well be appropriate if otherwise consistent with the policies animating the federal statute. Rivera involved such a claim. See 726 F.2d at 566. Not all claims under the AWPA, however, are of this nature. A claim for failure to pay wages as promised brought exclusively under the "Working Arrangements" provisions of the AWPA, for example, might be characterized as contractual in nature, see, e.g., Sanchez v. Morrison, 667 F.Supp. 536, 538 (W.D.Mich.1987) (noting the contractual nature of the plaintiffs' AWPA claims), whereas a claim for injuries suffered in an automobile accident brought under the Act's motor vehicle safety provisions might be characterized as sounding in tort, cf. Adams Fruit Co. v. Barrett, 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990) (holding that AWPA motor vehicle safety provisions provide a remedy for migrant farmworkers injured in an automobile accident while traveling to work in employer's van). Indeed, the court's search for the most appropriate state law cause of action from which to borrow the statute of limitations is a particularly fact-bound inquiry. Dreher, 22 F.3d at 231 n. 4. It is not necessarily the case that all claims brought under the "Information and Recordkeeping Requirements" provisions will be characterized uniformly. Id. at 232. Accordingly, we must first determine the "essence" of the particular federal statutory claim presented here and then determine whether the most analogous Arizona state statute adequately protects the federal interests embodied in the AWPA.
 
 
 23
 The present action is difficult to characterize in state law terms because it alleges violations of the Act's "Information and Recordkeeping" provisions as well as its "Working Arrangements" provisions. As a review of the plaintiffs' amended complaint demonstrates, however, one need not look far to discover the "essence" of the plaintiffs' complaint.
 
 
 24
 The complaint provides in relevant part as follows:
 
 
 25
 "Plaintiffs were given oral recruitment promises by employees of Taplett North Orchards and Centro de Progreso.... The promises made during recruitment constituted the terms and conditions of Plaintiffs' employment. Those terms were that Plaintiffs would each be paid a contract rate of $11.00 per bin or $3.35 per hour if the contract rate proved insufficient; that they would work a minimum of 40 hours per week for one month of employment; and that they would be provided free transportation to and from Washington along with adequate housing while working.... The Defendants failed [to fulfill these promises]."
 
 
 26
 The complaint then proceeds to allege violations of specific provisions of the AWPA. All but one of these allegations reveal the essentially contractual nature of the action. The plaintiffs make two allegations directly under the "Working Arrangements" provisions of the Act. They allege that the defendants "failed to pay the contract rate of $3.35 per hour," and "failed to pay ... their wages when due." Moreover, two of the plaintiffs' allegations under the "Information and Recordkeeping" provisions of the Act refer expressly to the employers' alleged breach of the oral agreements. First, the plaintiffs allege that "the Defendants knowingly provided false or misleading information to the Plaintiffs concerning the wage rate and other terms and conditions of agricultural employment." Second, they allege that "[t]he failure of Defendants to pay the contract rate was, in part, a result of the Defendants' failure to make, keep, and preserve accurate records." The only allegation not expressly related to the employers' alleged breach of the oral agreements is the plaintiffs' claim that the employers' failed to provide an "itemized written statement of information," as required by the AWPA. Even this claim, however, reflects the plaintiffs' fundamental premise that the employers misrepresented the terms and conditions of employment. Accordingly, on the present facts, we conclude that, in state law terms, the plaintiffs' action is in essence an action for breach of an oral agreement.
 
 
 27
 In Arizona, actions on an oral contract are governed by A.R.S. Sec. 12-543. This provision, applicable by its terms to contract claims "not evidenced by a contract in writing," provides a three-year limitations period. See, e.g., Healey v. Coury, 162 Ariz. 349, 353, 783 P.2d 795, 799 (App.1989) (holding that actions on an oral contract must be brought within three years of the accrual of the cause of action). Because the plaintiffs filed their claim in February 1992, within three years of the alleged wrongdoing, we conclude that the plaintiffs' claim was timely filed. Cf. Sanchez v. Overmyer et al., 845 F.Supp. 1178, 1180 (N.D.Ohio 1993) (applying to AWPA claim Ohio's six-year period for "an action upon a contract not in writing, express or implied, or upon a liability created by statute"); Sanchez v. Morrison, 667 F.Supp. 536, 538 (W.D.Mich.1987) (applying to AWPA claim Michigan's six-year limitations period for breach of contract rather than the three-year period for injury to property or person); Martinez v. Berlekamp Farms, Inc., 635 F.Supp. 1191, 1195 (N.D.Ohio 1986) (suggesting that six-year Ohio limitations period for breach of contract could apply to AWPA claims).
 
 
 28
 We note that it is possible to characterize the plaintiffs' federal action not as a contract action, but as a statutorily modified contract action. But cf. Felton, 940 F.2d at 512 ("The conclusion that an ERISA cause of action is most analogous to a statutory claim because ERISA is a statute reflects circular reasoning. Such reasoning sidesteps the Supreme Court's requirement that we look to state law causes of action to determine the appropriate limitation period."); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975) ("In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit ... on the prosecution of a closely analogous claim.") (emphasis added). If we were to adopt this latter characterization, Arizona case law suggests that the appropriate limitations period would be the one-year period contained in A.R.S. Sec. 12-541(3), the Arizona provision governing "liability created by statute." Arizona courts have held that A.R.S. Sec. 12-541(3) applies in a situation where an action did not exist at common law or where "a statute creates a new cause of action by altering certain elements of the common law." Murdock v. Balle, 144 Ariz. 136, 139, 696 P.2d 230, 233 (App.1985); cf. Day v. Schenectady Discount Corp., 125 Ariz. 564, 611 P.2d 568 (App.1980).
 
 
 29
 Even if we were predisposed to characterize the action as a statutorily modified contract action, however, we could not apply the provision and remain faithful to our "duty ... to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977). The Supreme Court repeatedly has emphasized that in no circumstance may we choose a state limitations period that "would frustrate the policies embraced by the federal enactment," and that "it would be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law." DelCostello, 462 U.S. at 161, 103 S.Ct. at 2289; see also Dreher v. Amphitheater Unified Sch. Dist., 22 F.3d 228, 232 (9th Cir.1994) (noting that we apply state limitation periods only if there is no "conflict[ ] with underlying federal policies"). As detailed below, application of a one-year limitations period would be inconsistent with the purposes of the AWPA in two essential respects. First, it would directly undermine the efficacy of the Act's central enforcement mechanisms. Second, it would be fundamentally at odds with the remedial purposes of the Act.
 
 
 30
 One important component of the AWPA statutory scheme is disclosure. As the House Report on the AWPA bill emphasized, "the duty to provide truthful information shall be a duty which runs throughout the period beginning with recruitment and extending until the point that the records required to be maintained need no longer be maintained." H.R.Rep. No. 97-885, 97th Cong., 2d Sess. 16, reprinted in U.S.C.C.A.N. 4547, 4562 (1982). The statute carries forward this purpose in Sec. 1821 (applicable to employers using migrant workers) and Sec. 1831 (applicable to employers using seasonal workers). These provisions not only require that employers provide comprehensive information to workers concerning the terms of their employment, but also that they "make, keep, and preserve records for three years [commencing on the last day of the employment relationship]" pertaining to hours worked, piecework units earned, wages, pay period earnings, specific sums withheld, and net pay for each worker. The three-year record retention requirement would be eviscerated were the private right of action in Sec. 1854 of the Act limited by a one-year statute of limitations (the one-year limit, of course, would apply not only to aggrieved workers but also to employers seeking to exercise their AWPA right to obtain employment data on workers who previously had worked for other contractors, see Secs. 1821(d) & (e); 1831(c) & (d)).
 
 
 31
 In more general terms, our paramount duty is to effectuate the federal policies embodied in the AWPA statutory scheme. As the DelCostello Court noted, where state provisions are unsatisfactory vehicles for the enforcement of federal law, the court should not arbitrarily apply them, but should look to the purposes of the federal legislation. See 462 U.S. at 161, 103 S.Ct. at 2289. A one-year statute of limitations is inappropriate because migrant and seasonal workers, who often move from state to state to participate in harvests and who may reside in any given state for only a month or two at a time, are particularly unlikely to be able to assert their rights in a short time-frame or to have their interests taken into consideration in state law provisions.
 
 
 32
 There are indications that it was precisely such concerns that motivated Congress to provide migrant and seasonal workers with federal law protection. See House Report at 4550 (noting the failures of the FLCRA and emphasizing the "desperate[ ] need" for redoubled efforts at enforcement of the protections originally embodied in the FLCRA); id. at 4548 (noting that "[e]vidence ... confirms that migrant and seasonal agricultural workers remain today, as in the past, the most abused of all workers in the United States"). See also Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1505 (11th Cir.1993) ("AWPA is a remedial statute and should be construed broadly to effect its humanitarian purpose."); Sanchez v. Morrison, 667 F.Supp. 536, 538 (W.D.Mich.1987) (noting the broad remedial purposes of the AWPA in deciding to borrow Michigan's six-year limitations period for breach of contract rather than the three-year period for injury to property or person).
 
 
 33
 Accordingly, we conclude that the appellants' claims are in essence contractual in nature and that the Arizona three-year limitations period for actions on an oral contract applies in this case. Moreover, even assuming arguendo that the plaintiffs' claims are best characterized as statutorily modified contract claims, we would decline to borrow the one-year limitations period contained in A.R.S. Sec. 12-541(3) in light of the three-year record retention requirements of the AWPA and its remedial and humanitarian purposes. Because we reverse the judgment of the district court on this basis, we do not address any of the other claims raised by the appellants.
 
 CONCLUSION
 
 34
 For the reasons stated above, we conclude that the district court erred in applying a one-year statute of limitations to bar the plaintiffs' claims. The proper limitations period is that contained in A.R.S. Sec. 12-543, which provides a three-year limitations period. Accordingly, we hold that the plaintiffs' claims are timely.
 
 
 35
 REVERSED and REMANDED.
 
 BEEZER, Circuit Judge, dissenting:
 
 36
 Because the result in this case is controlled by Rivera v. Anaya, 726 F.2d 564 (9th Cir.1984), I would affirm the district court's decision to borrow Arizona's one-year statute of limitations for liabilities created by statute and hold that appellants' action was untimely. See A.R.S. Sec. 12-541(3).
 
 
 37
 Appellants in this case have advanced three principal reasons why they believe we should disregard the clear dictates of Rivera. None has merit.
 
 
 38
 Appellants first contend that Rivera addressed a claim under the predecessor statute to the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. Sec. 1801 et seq. Although they are correct that Rivera was based on AWPA's predecessor statute, the Federal Farm Labor Contractor Registration Act, 7 U.S.C. Secs. 2041-2053 ("FLCRA"), the two statutes are not significantly different. In Rivera, we acknowledged that "the subject matter of this Act is now covered by the [AWPA]." Rivera, 726 F.2d at 567 n. 1. Any differences between the statutes result from shortcomings of the FLCRA recognized by Congress relating to a definitional structure that placed the duties and responsibilities only on farm labor contractors, rather than on agricultural employers generally. H.R.Rep. No. 97-885, 97th Cong., 2d Sess. (1982), reprinted in, 1982 U.S.C.C.A.N. 4547, 4548-50. I cannot agree that the AWPA is different from the FLCRA in kind or degree sufficient to disregard Rivera 's mandate.
 
 
 39
 Appellants next argue that Rivera did not properly characterize AWPA claims because they are more like actions on oral contracts. Even if I agreed, I believe we are bound by the authoritative precedent of Rivera. A three-judge panel of this court cannot overrule the decision of a prior panel. United States v. Gay, 967 F.2d 322, 327 (9th Cir.1992). Rivera forecloses analysis of the issue, because the decision there that the essence of an FLCRA action is one on a liability created by statute necessarily negates the contrary position that the essence of the action is contractual.
 
 
 40
 I also reject appellant's final argument that application of the Arizona statute of limitations is inconsistent with federal policy. As I have already indicated, we are not in a position to reconsider Rivera 's characterization of FLCRA claims in state law terms. Appellants further have not demonstrated that the federal interests embodied in the AWPA are of the same broad, comprehensive scope as those embodied in the few federal statutes for which the Supreme Court has adopted federal statutes of limitations. See, e.g., DelCostello v. Teamsters, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983).
 
 
 41
 We should neither overrule nor disregard Rivera 's holding that claims under the FLCRA and AWPA are governed by state statutes of limitations for actions on liabilities created by statute, other than a penalty for forfeiture. Overriding interests in uniformity, certainty, and the minimization of unnecessary litigation caution against disturbing Rivera unless and until this issue is heard by the court en banc.
 
 
 42
 I respectfully dissent.
 
 
 
 *
 The Honorable J. Spencer Letts, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 As the House Report on the AWPA makes clear, the main shortcomings of the FLCRA related to a definitional structure that placed duties and responsibilities on farm labor contractors rather than on agricultural employers generally. See H.R.Rep. No. 97-885, 97th Cong., 2d Sess. 16, reprinted in U.S.C.C.A.N. 4547, 4550 (1982). The restructured bill differed "from the [FLCRA] by clarifying the Department of Labor's jurisdiction over fixed site agricultural employers." Id. at 4568. The AWPA also placed greater duties on agricultural employers to provide safe housing and transportation. Finally, the AWPA "distinguishes between migrant and seasonal workers and provides for different employer responsibilities toward the two groups," id., specifically in the areas of housing and information disclosure, id. at 4564-65
 
 
 [2]
 Although only some defendants moved for dismissal, the district court entered judgment in favor of all defendants. We dismissed plaintiffs' appeal under Fed.R.App.P. 42(b) as to appellees Taplett Orchards, and Dean and Sheri Taplett. The remaining appellees are owners and employees of Centro de Progreso, which plaintiffs allege is a farm labor contractor. Elias Bermudez filed a two-page nonconforming brief on behalf of these parties, in which he states that the appellees merely provided office space for Taplett Orchards and that they have no information related to any of plaintiffs' claims
 
 
 [3]
 Congress recently created a uniform four-year limitations period for civil actions arising under federal statutes that do not specify a limitations period. See 28 U.S.C. Sec. 1658. This provision, however, applies only to causes of action created by Congress after Dec. 1, 1990, and thus is not applicable here
 
 
 [4]
 "[T]he problem of characterization 'is ultimately a question of federal law.' " Wilson, 471 U.S. at 270, 105 S.Ct. at 1943 (quoting United Auto., Aerospace and Agric. Implement Workers of America (UAW), AFL-CIO v. Hoosier Cardinal Corp., 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966)); see also United Auto. Workers, 383 U.S. at 709, 86 S.Ct. at 1115 (White, J., dissenting) ("[T]he cases also establish that the silence of Congress is not to be read as automatically putting an imprimatur on state law. Rather, state law is applied only because it supplements and fulfills federal policy, and the ultimate question is what federal policy requires.")
 
 
 [5]
 In Wilson, the Supreme Court held that courts should apply state law statutes of limitations governing personal injury actions to all claims brought under 42 U.S.C. Sec. 1983. In reaching this result, the Court noted that 42 U.S.C. Sec. 1988, which expressly instructs courts to look first to federal law when determining rules of decision for civil rights claims, "emphasizes the predominance of the federal interest in the borrowing process, taken as a whole." Id. at 269, 105 S.Ct. at 1943 (internal quotation omitted). The Court next noted the extraordinary nature of Sec. 1983, emphasizing that the provision provides " 'a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.' " Id. at 271-72, 105 S.Ct. at 1944-45 (quoting Mitchum v. Foster, 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972)). Finally, the Court explained that a nonuniform characterization of Sec. 1983 claims "inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of Sec. 1983." Id. at 272, 105 S.Ct. at 1945. But cf. id. at 287, 105 S.Ct. at 1952-53 (O'Connor, J., dissenting) (contending that the majority had abandoned a century of precedent, and arguing for continued application to Sec. 1983 claims of the general rule whereby courts look to the limitations period for "state claims directly analogous to the operative facts of [the pending] case"). On the basis of the above considerations, the Court concluded that the command in Sec. 1988 to look to federal law is "fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all Sec. 1983 claims." Id. at 275, 105 S.Ct. at 1946
 Reed involved the appropriate statute of limitations for actions under Sec. 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), a statutory provision directed at protecting union members' free speech and assembly rights. Emphasizing that "the core purpose" of Sec. 101(a)(2) is to enforce First Amendment rights, Reed, 488 U.S. at 325, 109 S.Ct. at 626, the Court concluded, as it did in the civil rights context, that Congress intended that courts characterize all claims arising under the statutory provision in the same way. The Court then followed Wilson in calling for uniform application of the limitations period contained in state law provisions governing personal injury actions. Id. at 326-27, 334, 109 S.Ct. at 626-27, 630-31.
 
 
 [6]
 We began by noting that "[t]he most analogous statute in this case," a California statute relating to farm labor contractors, also did not contain a limitations provision. 726 F.2d at 567. After examining the "most recent California cases on the subject," id., we concluded that "California's highest court would properly characterize this action as a private suit for damages" and apply the three-year limitations provision contained in the California statute for statutorily-created liability, id