**In the Matter of the ADOPTION OF ERIN G., A Minor Child.**

**No. S–11929.**

Supreme Court of Alaska.

Aug. 4, 2006.

---

Kenneth C. Kirk, Kenneth Kirk & Associates, Anchorage, for Appellant David L.

Daniel L. Callahan, Callahan Law Office, Fairbanks, for Appellees Christopher Grant and Doris Grant.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

David L. is the putative father of Erin G. Invoking the Indian Child Welfare Act (ICWA), he sought to set aside the decree granting the petition of Christopher and Doris Grant to adopt Erin. The superior court held that AS 25.23.140(b), Alaska's one-year statute of limitations for challenging adoption decrees, barred David's petition. He appeals. Because it appears that Congress intended that state statutes of limitations would generally apply to ICWA challenges to placement decrees, we affirm.

## II. FACTS AND PROCEEDINGS

Erin G. was born in 2001 to Joanne A., who was unmarried and ill with terminal cancer.[1] Erin is an Indian child within the meaning of the Indian Child Welfare Act (ICWA).[2] Before her death, Joanne sought to permanently place Erin with appellees Christopher and Doris Grant. The Grants petitioned to adopt Erin in late January 2002. In February Joanne consented to termi-

---

1. We use pseudonyms for all family members and the adoptive parents.

2. Indian Child Welfare Act § 4, 25 U.S.C. § 1903(4) (2000).

nation of her parental rights. She also identified appellant David L. as the father.[3]

The Grants' attorney formally notified David of the adoption petition, and filed a copy of the notice with the superior court, in March 2002. David obtained court-appointed counsel and, through counsel, objected to the proposed adoption.

The Grants moved for summary judgment against David, arguing that David's consent to the adoption was not necessary under either state law or ICWA because David had not properly acknowledged paternity of Erin. In opposing the Grants' motion, David submitted several signed but unsworn statements in which he appeared to assert that he was Erin's father.

On August 12, 2002 the superior court granted summary judgment to the Grants. It ruled that because David had not produced a sworn statement acknowledging paternity or the results of a blood test, he was not a "parent" as defined by state law or ICWA, and therefore could not object to the adoption.

On September 4, 2002 the court entered the adoption decree and the Grants assumed legal custody of Erin. Meanwhile, David appealed the grant of summary judgment against him. He was dissatisfied with his court-appointed attorney and requested a new attorney for the appeal. The superior court granted his request, but the new attorney did not pursue David's appeal, and on April 21, 2003 we dismissed that appeal under Alaska Appellate Rule 511.5 for lack of prosecution. David continued to file motions and write letters to the superior court regarding his case. In late January 2004 the superior court appointed a third attorney, Kenneth Kirk, to represent David regarding "any further post decree motions or appeals in this matter." In March 2004 we denied Attorney Kirk's motion to reinstate David's appeal.

---

**3.** Although Joanne at first refused to identify David, she indicated that the father was currently incarcerated for a certain well-publicized crime. She also mentioned his last name. The superior court indicated its intent to take judicial notice of the fact that David was the person identified by Joanne.

David continued filing pro se motions with the superior court throughout the remainder of 2004. On October 21, 2004 David filed a "Petition to Invalidate Adoption," one of the motions at issue in this appeal. His petition claimed that the Grants' adoption of Erin violated various provisions of ICWA. On December 7, 2004 the superior court summarily denied David's petition. David then filed a "Motion Pursuant to Petition to Invalidate Illegal Adoption" in which he again requested the invalidation of the adoption and also sought a grand jury indictment of the Grants for kidnapping. On March 1, 2005 the superior court issued an opinion thoroughly addressing and rejecting all of David's arguments regarding the adoption.

In a letter of March 9 David asked the superior court to appoint him an attorney to appeal the court's decision. The court apparently took no action on this request because David submitted a second request on April 15. On April 27 the superior court "reappointed" Attorney Kirk, who then filed a notice of appeal in this court and a motion to accept late filing on May 9. The Grants and the Guardian ad Litem both opposed that motion. This court, by order of an individual justice, granted the motion to accept the late filing.

## III. DISCUSSION

### A. Standard of Review

■■■ We apply our independent judgment to resolve questions of statutory interpretation, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[4] We liberally construe statutes enacted for the benefit of Indians, resolving "all doubts ... in favor of the Indians." [5]

### B. David's Failure To Comply with the Deadline for Filing Appeals Is Excused.

■■■ The Grants argue that David's ap-

---

**4.** *State v. Dupier,* 118 P.3d 1039, 1044 (Alaska 2005).

**5.** *In re L.A.M.,* 727 P.2d 1057, 1060 (Alaska 1986).

peal was untimely.[6] They note that the superior court distributed its final order on March 3, 2005, but that David did not file his notice of appeal until May 9, 2005. Alaska Appellate Rule 218(d) requires that a notice of appeal in this class of cases be filed within fifteen days after the date shown on the clerk's certificate of distribution of the order or judgment. But the time limit for filing a notice of appeal is not jurisdictional and the rule may be relaxed or dispensed with "to avoid surprise or injustice." [7]

Although David's appeal was late, the record indicates that he made a good-faith effort to appeal by the deadline. His March 9, 2005 letter to the superior court indicated his desire to appeal and asked the court to appoint him counsel. He wrote the court again on April 15, expressing worry that his time to appeal would expire if the court did not act on his request. We have held that "pro se litigants who make good faith efforts to comply with court rules should not be held to strict procedural requirements." [8] David may technically have been represented by Kenneth Kirk during this period, but neither David nor Kirk believed Kirk's representation was ongoing.[9] Once Kirk was "reappointed" as David's attorney, he filed this appeal within twelve days.

**6.** The fact that the Grants unsuccessfully opposed David's individual-justice motion to accept the late-filed appeal does not preclude them from again raising the issue of timeliness in their briefing. *See Radich v. Fairbanks Builders, Inc.,* 399 P.2d 215, 217 (Alaska 1965).

**7.** *Isaacson Structural Steel Co., Div. of Isaacson Corp. v. Armco Steel Corp.,* 640 P.2d 812, 815 n. 8 (Alaska 1982); *see also Radich,* 399 P.2d at 217.

**8.** *Noey v. Bledsoe,* 978 P.2d 1264, 1270 (Alaska 1999).

**9.** Kirk stopped working on David's case when we denied David's motion for reconsideration in 2004. David continued filing motions from prison, apparently without copying Kirk with those motions. Nor did the Grants serve Kirk with their response to David's motions. It is therefore understandable that Kirk believed that his representation of David had ended.

**10.** AS 25.23.140(b) states:

Subject to the disposition of an appeal, upon the expiration of one year after an adoption decree is issued, the decree may not be questioned by any person including the petitioner, in any manner upon any ground, including

Because of David's good-faith attempt to file his appeal within the time limit and confusion about whether Kirk was still his appointed counsel in March 2005, David's failure to comply with the time limits in Appellate Rule 218(d) is excused.

## C. Alaska's One–Year Statute of Limitations on Adoption Challenges Bars David's ICWA Claims.

■ Per AS 25.23.140(b), a challenge to an adoption decree must be filed within one year after the decree is issued.[10] The superior court held that this one-year limitation barred David's petition to invalidate the adoption decree. David argues that state statutes of limitations should not apply to adoption challenges brought under ICWA, a federal statute.

Section 1914 of ICWA allows "any parent or Indian custodian from whose custody [an Indian] child was removed" to "petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912 and 1913 of this title." [11] ICWA does not contain a generally applicable statute of limitations and § 1914 contains no time limits.[12]

fraud, misrepresentation, failure to give any required notice, or lack of jurisdiction of the parties or of the subject matter, unless, in the case of the adoption of a minor the petitioner has not taken custody of the minor, or, in the case of the adoption of an adult, the adult had no knowledge of the decree within the one-year period.

**11.** Indian Child Welfare Act § 104, 25 U.S.C. § 1914 (2000). Section 1911 of ICWA establishes the jurisdictional rights of Indian tribes, including the right to exclusive jurisdiction over Indian children residing within a reservation and the right to intervene in other proceedings. Section 1912 provides parents and Indian custodians with certain procedural rights, including the right to notice, counsel, and discovery. It also sets standards for termination of parental rights. Section 1913 sets out the requirements for a voluntary relinquishment of parental rights. David claimed violations of portions of all three of these provisions.

**12.** As discussed below, ICWA does impose a minimum limitations period of two years for actions challenging, on grounds of fraud or duress, the voluntary relinquishment of parental rights. 25

David maintains that because ICWA contains no general statute of limitations, challenges may be brought under § 1914 at any time.

### 1. *In re Adoption of T.N.F.* does not have stare decisis effect.

■ We have previously considered whether AS 25.23.140(b), Alaska's one-year limitation on adoption challenges, applies to claims brought under § 1914 of ICWA. In *In re Adoption of T.N.F.*, two of the four participating justices agreed that Alaska's one-year statute of limitations applied,[13] one justice concurred in the result without discussing the merits of the statute of limitations question,[14] and one justice dissented, arguing that § 1914 allows at least some ICWA claims to be brought at any time.[15]

■ The parties here dispute *T.N.F.*'s stare decisis effect. "Stare decisis compels us to give precedential value to our prior holdings."[16] David argues that because *T.N.F.* lacks a majority opinion it should not be given any stare decisis effect. The Grants counter that the plurality's opinion should be given stare decisis effect because a majority of participating justices agreed with the result.

■ We agree with David's conclusion that *T.N.F.* does not have stare decisis effect. A majority of the participating justices did

not agree on a rationale for deciding *T.N.F.* Generally, "[i]f a majority of the court agreed on a decision in the case, but less than a majority could agree on the reasoning for that decision, the decision has no stare decisis effect."[17] In some cases, a holding can be extracted from an opinion without a majority opinion. The United States Supreme Court has held that "[w]hen a fragmented court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds."[18] But one federal court has noted that this principle is inapplicable if there is no obvious "narrower" opinion or "common denominator of the Court's reasoning."[19]

■ *T.N.F.* contains no "narrower" reasoning agreed upon by all three affirming justices. The concurring justice expressed no opinion on the statute of limitations issue, and in agreeing with the result, he reasoned that ICWA did not give the plaintiff standing to sue.[20] The two-justice plurality specifically disagreed with the concurring justice on the standing issue.[21] Because a majority of the participating justices in *T.N.F.* did not agree on any one ground for affirmance, we do not accord *T.N.F.* stare decisis effect.[22]

---

U.S.C. § 1913(d). David does not rely on this provision.

**13.** *In re Adoption of T.N.F.*, 781 P.2d 973, 981 (Alaska 1989).

**14.** *Id.* at 982–84 (Compton, J., concurring).

**15.** *Id.* at 984–85 (Rabinowitz, J., dissenting).

**16.** *Joseph v. State*, 26 P.3d 459, 468 (Alaska 2001); *see also Thomas v. Anchorage Equal Rights Comm'n*, 102 P.3d 937, 943 (Alaska 2004) (holding that the court will not overrule previous holding entitled to stare decisis effect unless " 'clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent' " (quoting *State Commercial Fisheries Entry Comm'n v. Carlson*, 65 P.3d 851, 859 (Alaska 2003))).

**17.** *Ware v. Kentucky*, 47 S.W.3d 333, 335 (Ky. 2001) (quoting 20 Am.Jur. 2d Courts § 159 (1995)); *see also Negri v. Slotkin*, 397 Mich. 105,

244 N.W.2d 98, 100 (1976) ("Plurality decisions in which no majority of the justices participating agree as to the reasoning are not an authoritative interpretation binding on this Court under the doctrine of Stare decisis.").

**18.** *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotation marks omitted); *see also Cowles v. State*, 23 P.3d 1168, 1178 n. 28 (Alaska 2001) (Fabe, J., dissenting) (noting *Marks's* "narrowest ground" principle).

**19.** *Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161, 169–70 (3d Cir.1999).

**20.** *T.N.F.*, 781 P.2d at 982–84 (Compton, J., concurring).

**21.** *Id.* at 975–78.

**22.** The Grants also suggest that David waived his argument that *T.N.F.* lacked precedential force because he failed to raise it with the superior

### 2. Alaska's one-year statute of limitations applies.

Even though *T.N.F.* is not binding precedent, we nevertheless agree with the reasoning of the plurality opinion on the limitations issues.

■ Congress did not include a generally applicable statute of limitations in ICWA. It specified a two-year statute of limitations for one class of ICWA claims, those brought under § 1913(d). The absence of a general statute of limitations is "a void which is commonplace in federal statutory law." [23] The United States Supreme Court has held that "[w]hen Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." [24] Apart from *T.N.F.*, no reported case has discussed the issue of what statute of limitations applies for claims brought under § 1914 of ICWA. [25] But courts have "borrowed" state statutes of limitations in considering the timeliness of claims under many federal statutes, including the Employee Retirement Income Security Act, [26] the False Claims Act, [27] the Worker Adjustment and Retraining Notification Act, [28] the Labor–Management Reporting and Disclosure Act, [29] 42 U.S.C. § 1983, [30] the Individuals with Disabilities Education Act, [31] and the Labor Management Relations Act. [32]

court in his reply to the Grants' opposition to his petition to invalidate the decree. It is true that David failed to respond to the Grants' argument that *T.N.F.'s* holding barred his case. But "[w]e will consider arguments not raised explicitly in the trial court ... if the issue is 1) not dependent on any new or controverted facts; 2) closely related to the appellant's trial court arguments; and 3) could have been gleaned from the pleadings." *McConnell v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance*, 991 P.2d 178, 183 (Alaska 1999) (internal quotations and citations omitted). In this case, all three of these requirements are met. We also note that David was effectively acting pro se at the time and that his pleadings are therefore held to less stringent standards. *See DeNardo v. Calista Corp.*, 111 P.3d 326, 330 (Alaska 2005).

23. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 483, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) (holding that plaintiff's 42 U.S.C. § 1983 claim was subject to New York statutes of limitations).

24. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *see also Graham County Soil & Water Conservation Dist. v. United States*, 545 U.S. 409, 125 S.Ct. 2444, 2448, 162 L.Ed.2d 390 (2005); *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33–34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995); *Reed v. Transp. Union*, 488 U.S. 319, 323–24, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). Although Congress passed a "catch-all" law in 1990 that established a four-year limitations period for all federal claims without limitations provisions, that statute only applies to civil actions "arising under an Act of Congress enacted after the date of the enactment of this section." 28 U.S.C. § 1658. All of the ICWA provisions at issue in this case were enacted in their current form in 1978, well before the 1990 enactment of the federal catch-all statute of limitations.

25. A few treatises have discussed whether state statutes of limitations apply to ICWA claims, but their discussions are generally cursory. *See, e.g.,* THOMAS JACOBS, CHILDREN AND THE LAW. RIGHTS AND OBLIGATIONS § 5:13 (2006), *available at* Westlaw, CALRO § 5:13 (concluding that state statutes of limitations apply to adoption challenges under ICWA); CONFERENCE OF WESTERN ATTORNEYS GENERAL, AMERICAN INDIAN LAW DESKBOOK 496 (3d ed.2004) (stating that state limitations periods are applicable to ICWA claims); Jesse C. Trentadue & Myra A. DeMontigny, *The Indian Child Welfare Act of 1978: A Practitioner's Perspective*, 62 N.D. L.REV 487, 536 (1986) (concluding that claims under § 1914 may be subject to state limitations periods unless challenged order is void ab initio), *cited in T.N.F.*, 781 P.2d at 979; B.J. JONES, THE INDIAN CHILD WELFARE ACT HANDBOOK 101 (1995) (noting that "there does not appear to be any statute of limitations associated with the use of § 1914").

26. *N. Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Fund v. Jumbo Mkts., Inc.*, 906 F.2d 1371, 1372 (9th Cir.1990).

27. *Graham County*, 125 S.Ct. at 2453 (holding that no False Claims Act time limitations applied and remanding for determination of which state statute of limitations to borrow).

28. *N. Star Steel*, 515 U.S. at 33–35, 115 S.Ct. 1927.

29. *Reed*, 488 U.S. at 323–24, 109 S.Ct. 621.

30. *Tomanio*, 446 U.S. at 483–484, 100 S.Ct. 1790.

31. *Livingston Sch. Dist. Nos. 4 & 1 v. Keenan*, 82 F.3d 912, 918 (9th Cir.1996).

32. *Waggoner v. Dallaire*, 649 F.2d 1362, 1367 (9th Cir.1981).

David asks us to hold that no limitations period whatsoever applies to his § 1914 challenge to the adoption decree. But he cites no case in which a court has held that no statute of limitations applies to a federal statutory claim. Although courts have occasionally suggested that certain federal causes of action have no applicable statutes of limitation, such causes of action appear to be rare.[33] Courts, reasoning that the proposed state statute of limitations would be an "unsatisfactory vehicle[ ] for the enforcement of federal law," do sometimes hold that a particular state statute of limitations should not be applied to a given federal claim.[34] But in such cases—none of which involves ICWA— courts have either borrowed a different state statute of limitations,[35] or they have "used timeliness rules drawn from ·federal law— either express limitations periods from related federal statutes, or such alternatives as laches." [36]

Applying Alaska's one-year statute of limitations for challenging adoption decrees to ICWA adoption challenges not based on fraud or duress does not conflict with federal law or policy. As noted above, Congress regularly creates private rights of action without statutes of limitations. It is reasonable to assume that Congress's enactment of ICWA without a general statute of limitations was informed by "the settled practice" of borrowing statutes of limitations from state law.[37] If Congress had intended to exempt claims under § 1914 from state statutes of limitations, it could have easily done so with explicit statutory language. And indeed, if Congress had intended that § 1914 claims challenging placements, including adoptions, would be subject to no time limitations despite the disruptive consequences of delay, one would expect some indication of that intent in ICWA's legislative history. We are aware of no such indication of legislative intent.

Moreover, § 1913(d) indicates that Congress must have intended to allow state limitations periods to govern ICWA claims. Congress there adopted a two-year federal statute of limitations for claims that a parent's relinquishment of rights was obtained through fraud or duress, unless state law provides for a longer limitations period.[38] Subsection 1913(d) demonstrates that Congress was aware of, and endorsed, the practice of borrowing state statutes of limitations. It suggests that the drafters understood that state limitations periods would govern ICWA challenges unless Congress specified otherwise. Congress did so only as to claims brought under § 1913(d).

Obtaining a parent's consent to termination by fraud or duress is arguably one of the most egregious placement practices addressed by ICWA. Congress's decision to adopt a minimum limitations period only for fraud and duress claims suggests that it was comfortable with the possibility that shorter state limitations periods would govern claims brought under other ICWA provisions. Con-

---

33. *See, e.g., Rhines v. Weber,* 544 U.S. 269, 274, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (noting that until 1996 there was no statute of limitations on federal habeas corpus petitions); *Oneida County v. Oneida Indian Nation,* 470 U.S. 226, 243, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (noting that certain land claims under the Indian Claims Limitation Act of 1982 are exempt from the limitations provisions in 28 U.S.C. § 2415).

34. *Barajas v. Bermudez,* 43 F.3d 1251, 1260 (9th Cir.1994); *see also DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 161–63, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

35. *Barajas,* 43 F.3d at 1260.

36. *DelCostello,* 462 U.S. at 162, 103 S.Ct. 2281.

37. *Wilson,* 471 U.S. at 266–67, 105 S.Ct. 1938.

38. 25 U.S.C. § 1913(d) provides:

After the entry of a final decree of adoption of an Indian child in any State court, the parent may withdraw consent thereto upon the grounds that consent was obtained through fraud or duress and may petition the court to vacate such decree. Upon a finding that such consent was obtained through fraud or duress, the court shall vacate such decree and return the child to the parent. *No adoption which has been effective for at least two years may be invalidated under the provisions of this subsection unless otherwise permitted under State law.* (Emphasis added.) As the *T.N.F.* plurality pointed out, the legislative history explains that "[t]his right is limited to two years after entry of the the decree unless a longer period is provided by state law." *T.N.F.,* 781 P.2d at 979 (quoting H.R. No. 95–1386, 95th Cong., 2d Sess. 23 (1978), *reprinted in* 1978 U.S.C.C.A.N. 7530, 7545–46).

versely, it is unlikely that Congress would have limited the time for bringing claims under § 1913(d) if it intended that other § 1914 claims would be subject to no time limits.

Also, we agree with the reasoning of the *T.N.F.* plurality that § 1913(d) implicitly recognizes the important policy "that at some point adoptions must become final." [39] Although a primary purpose of ICWA is to "promote the stability and security of Indian tribes and families" by preventing the unwarranted breakup of Indian families, ICWA is also intended to "protect the best interests of Indian children." [40] As we noted in another case:

> [a]doptive custody results in the rapid development of lasting and powerful psychological ties between adoptive parents and children, especially young children. Once formed, these bonds can seldom be severed without irreparable damage to the child's well-being.[41]

ICWA is remedial legislation and must be liberally construed in favor of Indians,[42] but we do not think that an interpretation of ICWA that would completely disregard Indian children's interests in finality and stability would be consistent with Congress's intent in enacting the statute. We therefore hold that Alaska's one-year statute of limitations provides an appropriate balance between the important federal rights of Indian tribes and families and the best interests of adopted children.

David argues that § 1921 of ICWA prohibits us from applying any statute of limitations to ICWA claims. Section 1921 states:

> In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a

higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.[43]

David contends that because ICWA provides no statute of limitations, ICWA is a "Federal law ... provid[ing] a higher standard of protection to the rights of the parent" and should therefore trump Alaska's statute of limitations.

Section 1921, on its face, does not support David's interpretation. That provision requires that "State or Federal law" prevail if it provides more protection "than the rights provided under this subchapter." Because the statute requires a comparison between "State or Federal law" and "the rights provided under this subchapter," "State or Federal law" can only mean a state or federal law other than ICWA. Furthermore, a special provision is not necessary to ensure that a federal statute of limitations—or, as alleged in this case, a purported federal policy that lawsuits be allowed at any time—prevails over a conflicting state statute of limitations. Basic federal preemption principles require the same result.[44] David's argument fails because he cannot show that Congress's silence on the limitations issue indicates an intention to allow ICWA challenges at any time. Section 1921 does not shed any additional light on this question.

Alaska Statute 25.23.140(b) provides that, subject to the disposition of an appeal, an adoption cannot be questioned upon the expiration of one year after the decree is issued. The superior court issued the adoption decree on September 6, 2002.[45] Per AS

---

**39.** *T.N.F.*, 781 P.2d at 980.

**40.** 25 U.S.C § 1902.

**41.** *Hernandez v. Lambert*, 951 P.2d 436, 441–42 (Alaska 1998); *see also T.N.F.*, 781 P.2d at 980 ("To allow collateral attacks on final adoption decrees at any time threatens to unreasonably disrupt the upbringing of the adopted child.").

**42.** *See In re L.A.M.*, 727 P.2d 1057, 1060 (Alaska 1986).

**43.** 25 U.S.C. § 1921.

**44.** *See State v. Dupier*, 118 P.3d 1039, 1049 (Alaska 2005) (noting that state laws are preempted "if there is an actual conflict between federal and state law").

**45.** AS 25.23.140(b) refers to the date on which an adoption decree is "issued" without defining that term. Because David's petition was late under any possible definition of "issued," we need not determine its precise definition in this context. Rather, we assume without deciding that an adoption decree is "issued" on the date it is distributed to the parties, in this case, on September 6, 2002. *Cf.* Alaska R. Civ. P. 58.1

25.23.140(b), any challenge to the adoption filed after September 4, 2003 was untimely. David's October 21, 2004 petition to invalidate Erin's adoption was therefore time-barred.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the superior court denying David's petition to invalidate the adoption.

BRYNER, Justice, dissenting.

For the reasons expressed by Justice Rabinowitz in his dissenting opinion in *In re Adoption of T.N.F.*,[1] I dissent from the court's decision that David's challenge under ICWA § 1914 is governed by Alaska's statute of limitations. In my view, Justice Rabinowitz's dissent bears repetition here because it persuasively responds to the interpretation of congressional intent adopted by today's opinion:

> Given the unambiguous text of § 1913(a), I conclude Congress intended that any consent obtained in violation of the strict procedural safeguards governing termination of parental rights was to have no force or effect. It follows that an adoption based on an invalid consent is void *ab initio*, and that a petition to vacate such a void decree can, pursuant to § 1914, be filed at any time.
>
> Admittedly, the factual circumstances of this case are highly unusual and there are significant considerations which militate against disturbing any parent-adoptive child relationship. Nevertheless, I believe that my reading of §§ 1913(a) and 1914 is consonant with Congress' overall intent in enacting the Indian Child Welfare Act and with the specific intent reflected in the procedural safeguards provided in § 1913(a).
>
> It is apparent that the provisions of § 1913(a) were designed to increase the likelihood that a consent to termination of parental rights was in fact voluntarily given. If, but only if, ICWA's procedures are followed does the Act achieve its purpose to establish "minimum Federal standards for the removal of Indian children from their families." 25 U.S.C. § 1902 (Supp. 1987). If, but only if, such procedures have been followed should a parent of an Indian child need allege fraud, duress, or other misconduct.
>
> I cannot agree that the absence of fraud or duress under § 1913(d) impliedly limits the protections of § 1913(a). § 1913(d) delimits minimum not maximum protection; it expands not contracts the rights of Indian parents. The majority instead construes the narrow provision of § 1913(d) to restrict the broad scope of ICWA and hobble its purpose.[1]

---

1. The legislative history of ICWA discloses that Congress was aware of the following considerations:

> The decision to take Indian children from their natural homes is, in most cases, carried out without due process of law....
>
> Many cases do not go through an adjudicatory process at all, since the voluntary waiver of parental rights is a device widely employed by social workers to gain custody of children. Because of the availability of waivers and because a great number of Indian parents depend on welfare payments for survival, they are exposed to the sometimes coercive arguments of welfare departments.

See H.R.Rep. No. 1386, 95th Cong., 2d Sess. 11 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 7530, 7533.[2]

---

(providing for judgments, that time for appeal, review, and reconsideration begins running on date shown in clerk's certificate of distribution entered on written judgment).

1. 781 P.2d 973, 984 (Alaska 1989).

2. *Id.* at 984–85 & n. 1.