245 P.3d 711 (2010)
2010 UT 55
In the matter of the ADOPTION OF A.B. and D.T., persons under eighteen years of age.
Navajo Nation, Appellant,
v.
State of Utah, Appellee.
No. 20080211.
Supreme Court of Utah.
September 28, 2010.
Rehearing Denied January 28, 2011.
*712 K. Andrew Fitzgerald, Moab, for appellant.
Mark L. Shurtleff, Att'y Gen., John M. Peterson, Carol L.C. Verdoia, Asst. Att'ys Gen., Wesley D. Hutchins, Salt Lake City, for appellee.
Martha M. Pierce, Salt Lake City, for the Office of the Guardian Ad Litem.

On Certification from the Utah Court of Appeals
NEHRING, Justice:

INTRODUCTION
¶ 1 This appeal arises from a juvenile court order that granted the adoption of two children who are both enrolled members of the Navajo Nation (the "Nation") by their non-Indian foster parents. The Nation challenges the adoption order and several other juvenile court orders concerning the children. The Nation, however, failed to comply with an essential procedural prerequisite to its appeal because its notice of appeal was not timely filed with the Nation's signature. This failure presents two jurisdictional issues of first impression: first, whether the Indian Child Welfare Act ("ICWA") preempts Utah's notice of appeal requirements; second, whether Indian tribes, as quasi-sovereign entities, are exempt from Utah's notice of appeal requirements. We hold that ICWA does not preempt Utah's notice of appeal requirements and that those requirements apply to Indian tribes. Our answers to these questions compel us to dismiss the Nation's appeal because we have no jurisdiction over it.

BACKGROUND
¶ 2 A.B. and D.T. were born to Thomasita Tsosie on July 16, 1999, and December 28, 2005, respectively. Ms. Tsosie, A.B., and D.T. are all enrolled members of the Navajo Nation, a federally recognized Indian tribe. Ms. Tsosie also had three other children: A1.B., O.R., and Baby Girl Tsosie. Because A1.B., O.R., and Baby Girl Tsosie are not at issue in this appeal, we do not reference them except to the extent that their affairs *713 provide context for the adoption of A.B. and D.T.[1]

I. THE ODYSSEY OF THE TSOSIE CHILDREN
¶ 3 On September 25, 2005, the Salt Lake City Police Department contacted the Division of Child and Family Services ("DCFS") after a police officer found A.B. and D.T.'s four-year-old sibling, A1.B., crying alone by a dumpster in Salt Lake City. At the time, Ms. Tsosie was pregnant with D.T.[2] and resided with A1.B. and O.R. in Salt Lake City. A.B. was not in Ms. Tsosie's physical custody because he had been living with his grandmother, Lorene VanWinkle,[3] on a Navajo Nation reservation in Arizona.
¶ 4 At a shelter hearing a few days later, the juvenile court ordered DCFS to return the children to Ms. Tsosie and to provide family preservation services to them. Two weeks later, the juvenile court ordered DCFS to contact the Nation "to determine if the protective supervision service case [could] be transferred to the tribe." On February 6, 2006, the Nation informed DCFS that Lorene VanWinkle would be willing to keep A.B.
¶ 5 A short time later, Ms. Tsosie was sent to jail after being found in contempt of court for intentionally failing to follow the court's orders that she participate in peer parenting, maintain contact with the DCFS caseworker, and take domestic violence classes. The juvenile court removed all four children from Ms. Tsosie's custody after finding that "continuation in the home would be contrary to the welfare of the children and removal [would be] in their best interests." A.B. was allowed to remain on an extended visit with Lorene VanWinkle in Arizona. D.T. was sent on an extended home visit with her aunt, Thomasita Tsosie, who failed to pass a DCFS background and federal criminal background check. With the failure of this placement, the court gave custody of D.T. to another relative, Ermalinda Tsosie. One week later, Ermalinda Tsosie contacted DCFS and requested that D.T. be removed from her home. As a result, D.T. was placed in the Christmas Box House in Salt Lake City.
¶ 6 Shortly thereafter, Lorene and Laurie VanWinkle picked up D.T. from the Christmas Box House. Laurie is Lorene's daughter and the children's aunt.[4] DCFS continued to provide protective supervision services to the children. Approximately three months later, the juvenile court granted Laurie VanWinkle permanent legal custody of A.B. and D.T. and terminated DCFS's involvement with the children. But after only two weeks, Laurie VanWinkle informed the court that she wanted to relinquish custody of the children. Laurie VanWinkle requested that the children stay with their closest relatives in Salt Lake City until a permanent placement could be made and asked the court to "do what is best for the children and mother." The court treated Laurie VanWinkle's written request as a petition to transfer custody of the children.
¶ 7 On September 26, 2006one year after DCFS first became involved with the childrenthe juvenile court removed A.B. and D.T. from Laurie VanWinkle's custody and placed them in the interim custody of DCFS. The court found that Ms. Tsosie and her family had been harassing and alienating Laurie VanWinkle and that continued custody by either Laurie VanWinkle or Ms. Tsosie would present "a substantial danger to the physical health or safety of the children." The court also found that DCFS "made reasonable efforts to prevent out of home care" by providing protective supervision services, *714 making kinship placements, and creating a service plan for the mother and the custodian.
¶ 8 As required by ICWA, the State sent notice of the removal and interim custody by DCFS to the Nation. Approximately one week later, Joe Shirley, Jr., President of the Chinle Arizona chapter of the Nation, sent a letter to the juvenile court that requested the children be returned to Laurie VanWinkle "[i]n accordance with [ICWA] and the need to provide a safe and stable environment for the child[ren]." The next day, the court left a message with the Nation asking whether Mr. Shirley's letter was intended to communicate the Nation's intention to intervene in the child custody proceedings. The State also sent written notice to the Nation that it had "the right to intervene (be made a party) in this [child custody] proceeding" and "the right to request by petition that these proceedings be transferred to the Tribal Court." The Nation did not intervene at that time.
¶ 9 Once in DCFS custody, D.T. was placed in an emergency foster home, and then transferred to a legal-risk home. A.B. was also placed in an emergency foster home, and then transferred to two different specialized foster homes. On January 31, 2007, DCFS reported that the children were "doing well in their current foster care placements," that "there ha[d] been no visitation with [Ms. Tsosie]" because she "[would] not make those arrangements," and that the permanency goal for the children was guardianship with relatives. DCFS also reported that it had "been in constant contact with the Navajo Tribe" but the Nation was "still working on the home study for Lorene VanWinkle."
¶ 10 On April 12, 2007, the juvenile court held a pretrial hearing regarding the possible termination of Ms. Tsosie's parental rights. The court considered two letters written by Lorene VanWinkle that requested custody of the children as well as the Nation's request that the court transfer the children to its jurisdiction and the VanWinkle home. The Nation provided a home study and certification for Lorene VanWinkle. During the hearing, A.B.'s father objected to the children being placed with the Nation. Based on the father's objection, the juvenile court declined to give custody to Lorene VanWinkle or the Nation at that time. Instead, the court asked the parties to brief whether "good cause" existed under ICWA to deny the Nation's request that the court transfer jurisdiction over the children to the Navajo Tribal Court. Shortly thereafter, on April 18, 2007, the Nation, for the first time, moved to intervene in the proceedings pursuant to ICWA, 25 U.S.C. § 1911(c).
¶ 11 On May 18, 2007nearly eight months after A.B. and D.T. were removed from Laurie VanWinkle's home and were placed in foster carethe juvenile court terminated Ms. Tsosie's parental rights to A.B. and D.T. The court also determined that D.T.'s unknown father had abandoned D.T. and terminated his parental rights. The Nation's attorney was present at the proceedings. The court first ruled that it had concurrent jurisdiction with the Navajo Tribal Court because the children resided in Salt Lake County when the initial pleadings were filed and because Ms. Tsosie lived in Salt Lake County when the children were placed in DCFS custody. Next, the court found that Ms. Tsosie had "neglected or abused the children," and that continued custody by Ms. Tsosie would likely result in serious emotional or physical damage to the children. The court also found that DCFS "made a diligent search to locate a placement that [met] the preferences established within ICWA" and that there was "good cause not to place the children according to [ICWA] placement preferences," including a prior placement of the children within the family on the reservation, the objection of the father to the transfer of jurisdiction to the tribe, and the recommendation of the children's therapist who opposed moving the children from their current foster home. Finally, the court explained that the children were "doing well in the adoptive home," and that DCFS had made "active efforts" to prevent the breakup of the family as required by ICWA, but that the active efforts were unsuccessful. The court's order contained a "Notice of Appellate Rights" that stated, in part,
You have the right to appeal any appealable order, decree or judgment. Appeals *715 from juvenile court orders shall be taken within 15 days from entry of the order, decree or judgment appealed from. If an appeal is taken, it must be signed by the appellant's attorney and by appellant, unless the appellant is a minor child or state agency. If an appellant fails to timely sign a notice of appeal, the appeal shall be dismissed.[5]
¶ 12 In a separate order, the juvenile court denied the Nation's attempt to transfer jurisdiction over the children. Although ICWA creates a preference for tribal court jurisdiction, the court found that there was "good cause" under section 1911(b) of ICWA to deny the transfer of jurisdiction to the Navajo Tribal Court. The juvenile court explained that the Nation waited nineteen months to file its motion to transfer jurisdiction; thus, the Nation permitted the proceedings to reach an "advanced stage" because "the posture of the case was at a parental deprivation of rights trial, which is often the final proceeding in such matters, save for an adoption hearing." The court also noted that "DCFS sent eight different notices to the [Nation] to alert the [Nation] that the children were in state custody and subject to the jurisdiction of this court" and that the "Nation was involved in the case from the beginning, and often participated in hearings in this [c]ourt by phone. As such, the [c]ourt often took into consideration the [Nation's] wishes regarding the children." The Nation did not appeal either order.
¶ 13 Approximately five months later, the juvenile court terminated the parental rights of A.B.'s father. The court reiterated that it had concurrent jurisdiction with the Nation, that DCFS had made a diligent search to locate a placement that complied with ICWA, that there was "good cause" not to place the children according to ICWA preferences, and that DCFS made active but unsuccessful efforts to prevent the breakup of the family as required by section 1912(d) of ICWA. The court concluded that adoption was the most appropriate plan for the children. Although the Nation participated in the proceedings and the court's order again contained a "Notice of Appellate Rights," the Nation did not appeal.

II. THE JUVENILE COURT GRANTS THE NON-INDIAN FOSTER PARENTS' PETITION FOR ADOPTION
¶ 14 On January 11, 2008, A.B. and D.T.'s non-Indian foster parents filed a Verified Petition for Adoption with the juvenile court. The Nation objected to the petition on the grounds that DCFS had not followed the placement preferences required by section 1915 of ICWA.
¶ 15 The juvenile court granted the non-Indian foster parents' Verified Petition for Adoption on February 21, 2008. The court's order echoed its previous orders. The court first ruled that it had concurrent jurisdiction with the Navajo Tribal Court and was, therefore, a competent forum to hear the adoption proceedings. Next, the court reaffirmed that there was "good cause" under ICWA section 1911(b) to deny the transfer of jurisdiction to the Navajo Tribal Court. Similarly, the court held that there was "good cause" under ICWA section 1915 to place A.B. and D.T. outside ICWA placement preferences. The court also found that A.B.'s and D.T.'s best interests would be promoted by the adoption. The court explained that A.B. and D.T. had resided with the non-Indian foster parents for nearly thirteen months and that the foster parents "have engaged, and have committed to continue to engage, in numerous efforts to educate [A.B. and D.T.] regarding their Navajo culture and traditions throughout their lives."
¶ 16 In response, the Nation sought extraordinary relief from the rulings of the juvenile court. We summarily denied the petition because the Nation was free to file a direct appeal. On March 7, 2008, the Nation filed a direct appeal from the district court's adoption decree. This was the first appeal the Nation chose to file since the shelter hearing was first held in September 2005. The Nation's notice of appeal, however, did not comply with Utah's notice of appeal requirements.

*716 III. THE NATION FILES A DEFICIENT NOTICE OF APPEAL
¶ 17 Under Utah law, a notice of appeal must be filed within fifteen days of the order appealed from and must contain the appellant's signature.[6] While the appellant's signature is always required, the fifteen-day filing period may be extended if certain conditions are met. If the appellant's counsel files a certification of diligent search (for the appellant) with the unsigned notice of appeal, the appellant is granted an additional fifteen days to correct the deficiency by filing an amended notice of appeal that contains the appellant's signature.[7] If an appellant fails to file a signed notice of appeal in conformity with these rules, "the appeal shall be dismissed."[8]
¶ 18 In this case, the Nation's original notice of appeal was defective. Even though it was filed within fifteen days of the adoption order and signed by the Nation's counsel, the notice of appeal did not contain the Nation's signature. And the Nation did not acquire the additional fifteen days to correct the deficiency because the Nation's counsel did not file a certification of diligent search.
¶ 19 Recognizing these errors, a clerk from the court of appeals sent a letter to the Nation's counsel explaining that the notice of appeal was deficient and would be dismissed if a certification of diligent search was not filed upon receipt of the letter. The Nation's counsel again failed to file a certification of diligent search. Instead, the Nation waited until March 24, 2008, to file an amended notice of appeal that included the signature of its representative. Thus, the Nation failed to "timely sign a notice of appeal" as required by Utah law.[9]
¶ 20 On April 8, 2008, the Nation requested a ten-day extension to file its petition on appeal. The court of appeals granted the Nation's request. But rather than file a petition on appeal, the Nation challenged the court's jurisdiction by filing a "Motion for Summary Reversal Based on Lack of Jurisdiction and Memorandum of Points and Authorities in Support Thereof." The court of appeals entered an order that the Nation's motion was inappropriate in child welfare cases. Nonetheless, the court of appeals construed the motion as the petition on appeal and allowed the Nation to file an amended petition on appeal within ten days of its order. Twenty days later, on May 27, 2008, the Nation filed its amended petition on appeal. Despite the petition's untimeliness, the court of appeals ordered the parties to brief the relevant issues and subsequently certified the appeal to this court pursuant to section 78A-3-102(3)(b) of the Utah Code and Utah Rule of Appellate Procedure 43(a).

STANDARD OF REVIEW
¶ 21 Whether this court has jurisdiction over an appeal is a question of law that can be raised for the first time on appeal.[10] When this court lacks jurisdiction over an appeal, it retains only the authority *717 to dismiss the appeal.[11] Whether federal law, here ICWA, preempts state law is a question of law that we review de novo.[12]

ANALYSIS
¶ 22 In this appeal, the Nation asks us to vacate several of the juvenile court's orders involving A.B. and D.T. because the Nation claims that those orders violate ICWA. The Nation makes four arguments in support of this claim. First, the Nation contends that its tribal courts maintained exclusive jurisdiction over A.B. and D.T. and that we must, therefore, vacate all orders entered after A.B. and D.T. were removed from Laurie VanWinkle's custody in October 2006. Second, the Nation argues that the juvenile court erred when it exercised jurisdiction over D.T. because the State did not, prior to the shelter hearing concerning D.T., file a verified petition to commence proceedings in a juvenile court alleging that D.T. was abused, neglected, or dependent as required by Utah Code section 78-3a-305(3).[13] Third, the Nation argues that this court must invalidate the adoption order under section 1914 of ICWA because the juvenile court violated sections 1911, 1912, 1913, and 1915 of ICWA throughout its involvement with A.B. and D.T. Finally, the Nation contends that its due process rights were violated at the adoption proceedings.
¶ 23 Before we can turn our attention to these claims, we must answer the threshold question of whether we have jurisdiction over this appeal. As explained above, the Nation's original notice of appeal did not contain the Nation's signature, the Nation did not receive the fifteen-day extension to file an amended notice of appeal because its counsel did not file a certification of diligent search, and the Nation's amended notice of appeal was filed more than fifteen days after the adoption order was entered.[14]
¶ 24 Regardless of these shortcomings, the Nation contends that this court maintains jurisdiction over this appeal. The Nation defends this assertion by claiming that ICWA preempts Utah's notice of appeal requirements because section 1914 of ICWA gives Indian tribes the right to petition state courts at any time to invalidate any state action that violates ICWA. Alternatively, the Nation claims it was automatically entitled to the fifteen-day extension to file an amended notice of appeal because the rule 53(b) certification of diligent search requirement cannot apply to quasi-sovereign entities. We disagree with both assertions.
¶ 25 We hold that (I) ICWA does not preempt Utah's notice of appeal requirements and (II) Utah appellate courts lack jurisdiction over an appeal, even when the appellant is an Indian tribe, if the notice of appeal is not filed in strict compliance with Utah's notice of appeal requirements. Thus, because the Nation's notice of appeal was not timely filed with the Nation's signature, we dismiss this appeal for lack of jurisdiction.[15]

I. UTAH'S NOTICE OF APPEAL REQUIREMENTS ARE NOT PREEMPTED BY ICWA
¶ 26 The Nation first argues that Utah's notice of appeal requirements are preempted by ICWA. We have not addressed this preemption issue before. The United States Supreme Court has recognized three categories of federal preemption: (A) express preemption, (B) field preemption, and *718 (C) conflict preemption.[16] In addition to these traditional categories, when examining an issue of Indian tribal preemption, we must also balance "the nature of the competing interests at stake" rather than "narrow[ly] focus on congressional intent to preempt state law as the sole touchstone."[17]
¶ 27 The Nation contends that section 1914 of ICWA gives an Indian child's tribe the right to petition any court of competent jurisdiction to invalidate any child custody action that violates sections 1911, 1912, or 1913 of ICWA. And because section 1914 itself neither imposes time limits to file such petitions nor provides that such petitions are subject to state-imposed time limits, the Nation claims that section 1914 petitions can presumably be filed at any time. The Nation also argues that under section 1921 of ICWA, state law only applies in child welfare proceedings involving Indian children if the state law provides higher standards of protection to Indian tribes than ICWA.[18] Thus, the Nation concludes that because section 1914 petitions can presumably be raised at any time, Utah's notice of appeal requirements are more restrictive than ICWA and are therefore preempted and unenforceable.
¶ 28 For analytical clarity, we first examine the Nation's preemption argument under the three traditional categories of federal preemption: (A) express preemption, (B) field preemption, and (C) conflict preemption. We then balance the Nation's interests under ICWA with Utah's interest that appeals from child custody proceedings be dismissed if a signed notice of appeal is not timely filed by the appellant. We conclude that Utah's notice of appeal requirements are not preempted by ICWA.

A. There Is No Express Preemption of Utah's Notice of Appeal Requirements
¶ 29 Express preemption occurs "when the language of the federal statute reveals an express congressional intent to preempt state law."[19] Express preemption cannot occur through mere silence; it requires an explicit statement "`delivered in a clear congressional voice.'"[20]
¶ 30 ICWA does not contain any explicit statement that Congress intended ICWA to preempt state rules of appellate procedure. Furthermore, ICWA clearly contemplates that state courts will adjudicate a number of child custody cases involving Indian children.[21] Indeed, this court recently explained that the United States Supreme Court has found express preemption in only two circumstances, neither of which involved ICWA.[22]

B. There Is No Field Preemption of Utah's Notice of Appeal Requirements
¶ 31 Field preemption occurs "`when the scope of a statute indicates that Congress *719 intended federal law to occupy a field exclusively.'"[23] The intent of Congress to regulate a field exclusively "`may be inferred from a scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'"[24]
¶ 32 ICWA clearly contemplates that state courts will adjudicate some child welfare cases involving Indian children.[25] In these state court proceedings, Congress intended ICWA to
protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of the Indian culture.[26]
These minimum standards do not wholly repudiate state rules of appellate procedure.[27] Instead, ICWA's minimum standards focus on core protections: requiring transfer of jurisdiction to Indian tribes in certain situations, providing a right to counsel, requiring notice of child welfare proceedings to Indian tribes, invalidating illegal proceedings, imposing foster care placement preferences, and imposing high standards of proof in parental termination hearings.[28] So long as these core protections are honored and the intent of ICWA is preserved, states may fashion the underlying procedural framework.[29] Accordingly, whether Utah's notice of appeal requirements are preempted by ICWA's minimum requirements is not a matter of field preemption.

C. There Is No Conflict Preemption of Utah's Notice of Appeal Requirements
¶ 33 Conflict preemption occurs "where it is impossible . . . to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[30] To determine whether it is impossible to comply with both ICWA and Utah's notice of appeal requirements, or whether Utah's notice of appeal requirements stand as an obstacle to accomplishing the full purposes of ICWA, we first look to the plain language of ICWA.[31] *720 The Nation argues that under section 1914 of ICWA, it can petition this court at any time to invalidate the juvenile court's orders regarding A.B. and D.T. Section 1914 provides,
Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections [1911, 1912, and 1913] of this Act.[32]
By its plain language, section 1914 does not conflict with Utah's notice of appeal requirements. Section 1914 gives Indian tribes the right to appeal state court actions "for foster care placement or termination of parental rights . . . upon a showing that such action violated any provision of sections [1911, 1912, and 1913] of [ICWA]."[33] Utah law clearly protects that right by giving intervening Indian tribes the right to appeal "any order, decree, or judgment of the juvenile court."[34] Although Utah law requires that an appeal "shall be dismissed" if the "appellant fails to timely sign a notice of appeal,"[35] Utah's notice of appeal requirements do not conflict with the basic right to appeal provided by section 1914. Furthermore, nothing in ICWA indicates that Congress intended that section 1914 petitions be available without limitation, and ICWA does not contain any rules of procedure that could be construed to compete with state appellate rules of procedure. Had Congress intended that section 1914 petitions be available at any time, or that state rules of procedure be subordinate to section 1914 petitions, it could have so stated. But because the plain language of section 1914 only confers on Indian tribes the right to appeal state court actions and because Utah law protects that right, we hold that ICWA does not conflict with Utah's notice of appeal requirements.
¶ 34 We also note that the plain language of section 1914 does not give an Indian tribe the right to appeal adoption proceedings involving Indian children. Rather, the plain language of section 1914 grants an Indian tribe the right to petition any court of competent jurisdiction to invalidate any action "for foster care placement or termination of parental rights under [s]tate law."[36] Notably absent is the right to appeal adoption proceedings. Thus, to the extent that Utah law gives an Indian tribe a right to appeal child adoption proceedings, Utah law provides the tribe with greater protections than ICWA. And consistent with section 1921 of ICWA,[37] although an Indian tribe is entitled to claim the benefit of greater state protections where they exist, the tribe cannot at the same time argue that those additional state protections violate ICWA. Here, the Nation had a right under Utah law to appeal the juvenile court's adoption order. To take advantage of that right, the Nation was required to comply with the applicable state procedural rules. The Nation failed to do so, however, and nothing in ICWA excuses this failure or preempts Utah's procedural requirements.

D. Utah's Notice of Appeal Requirements Neither Interfere With nor Are Incompatible With the Federal and Tribal Interests Reflected in ICWA
¶ 35 Having determined that Utah's notice of appeal requirements are not preempted under the three traditional preemption categories, we finally balance the "nature of the competing interests at stake."[38] Under this analysis, "State jurisdiction *721 is [preempted] by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority."[39]
¶ 36 As discussed above, ICWA was enacted "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families" by establishing minimum federal standards that apply in state court actions involving Indian children.[40] To ensure that state courts apply these minimum protections, section 1914 creates a mechanism for Indian tribes to petition courts of competent jurisdiction to invalidate state court actions that violate certain provisions of ICWA.[41]
¶ 37 Consistent with section 1914, Utah law guarantees Indian tribes the right to appeal state court proceedings that involve Indian children.[42] Moreover, as we have explained, Utah law actually confers greater protections than ICWA because Utah law permits an Indian tribe to appeal child adoption proceedings whereas ICWA only gives an Indian tribe the right to challenge "foster care placement or termination of parental rights" actions.[43] To swiftly and permanently resolve child custody issues, Utah law requires a notice of appeal to be timely filed with the appellant's signature.[44] To protect the appellant, Utah Rule of Appellate Procedure 53(b) gives an additional fifteen days to file an amended notice of appeal if the appellant's counsel files a certification of diligent search with the amended notice. These requirements promote Utah's legitimate interest in providing, without undue delay, a stable and permanent adoptive home to children who might otherwise linger indefinitely in foster care.[45] These requirements are not onerous and place no additional burdens on Indian tribes. Although failure to comply with the requirements may have harsh consequences, those consequences do not unfairly target Indian tribes or deprive them of their interests more than any other party. Finally, Utah's interest in the swift resolution of child custody cases is consistent with Congress's intention that ICWA "protect the best interests of Indian children and . . . promote the stability and security of Indian tribes and families."[46] Accordingly, we hold that Utah's notice of appeal requirements are not preempted by ICWA.

II. WE LACK JURISDICTION OVER THIS APPEAL BECAUSE THE NAVAJO NATION DID NOT FILE ITS NOTICE OF APPEAL IN ACCORDANCE WITH UTAH'S NOTICE OF APPEAL REQUIREMENTS
¶ 38 Having concluded that ICWA does not preempt Utah's notice of appeal requirements, we next address whether Indian tribes are exempt from those requirements in light of their unique status as quasi-sovereign entities.
¶ 39 The Nation contends that its failure to timely file a signed notice of appeal does not divest this court of jurisdiction to hear this appeal. The Nation reasons that it was automatically entitled to the fifteen-day extension to file a signed notice of appeal under rule 53(b) when it filed "the original notice of appeal with a signature line for the Nation, but without [its] signature" because a certification *722 of diligent search cannot be required when the appellant is a sovereign entity.
¶ 40 The Nation cites no authority for its position. Rather, it contends that the certification of diligent search "is unnecessary when the appellant is a sovereign entity" because the certification form itself only evidences "counsel's efforts to locate a client who has indicated a desire to appeal but has failed to maintain contact with their attorney during the process." The Nation claims that it had already determined to appeal the adoption order and had signed a notice of appeal, but the notice of appeal was misplaced and the Nation's representative was temporarily unavailable during the fifteen-day filing period. The Nation concludes that its counsel was not required to file the certification of diligent search because its "representative had not lagged in its duty to keep in contact with its counsel . . . and was not going to disappear during the process." We disagree.
¶ 41 Indian tribes are not relieved from Utah's clearly stated notice of appeal requirements. Rule 53(b) only excludes "a minor child or state agency" from the signature requirement; the Nation concedes it is neither. Furthermore, Utah's notice of appeal requirements comport with ICWA's minimum requirements and even surpass those minimum requirements by providing Indian tribes with a right to appeal child adoption proceedings. In addition, Utah's notice of appeal requirements promote Utah's legitimate interests by ensuring that Indian tribes intend to meaningfully participate in appeals from child welfare proceedings.[47] As the court of appeals has noted "If counsel could, at any time and for any reason, file an incomplete notice of appeal and thereby receive an extension, the specified time period for appeal would be completely circumvented and made ineffectual."[48] We find this reasoning equally applicable to Indian tribes: the Nation's quasi-sovereign status does not permit it to circumvent Utah's clearly stated notice of appeal requirements.
¶ 42 We also note that the Nation chose to wait until the final hourin this case, the adoption proceedingsto appeal. The Nation could have appealed several orders involving A.B. and D.T., including the order removing A.B. and D.T. from the VanWinkle home, the order terminating the parental rights of Ms. Tsosie and D.T.'s father, the order denying the Nation's motion for transfer of jurisdiction over the children, and the order terminating the parental rights of A.B.'s father. Instead, the Nation waited nearly two-and-one-half years to appeal. This is precisely the type of behavior that the Utah notice of appeal requirements are intended to prevent and is similar to the behavior that constitutes "good cause" to deny a transfer of jurisdiction to an Indian tribe under the BIA Guidelines.[49]
¶ 43 Accordingly, because the Nation did not file its notice of appeal in conformity with Utah's notice of appeal requirements, we are *723 required to dismiss this appeal for lack of jurisdiction.[50]

III. THE NON-INDIAN FOSTER/ADOPTIVE PARENTS ARE NOT ENTITLED TO ATTORNEY FEES OR COSTS BECAUSE THE NAVAJO NATION'S APPEAL IS NEITHER FRIVOLOUS NOR FOR DELAY
¶ 44 The Adoptive Parents[51] contend that the Nation's appeal justifies an award of attorney fees and costs consistent with rule 33 of the Utah Rule of Appellate Procedure. Under rule 33, this court "shall award just damages, which may include single or double costs . . . and/or reasonable attorney fees, to the prevailing party" if we determine that an appeal "is either frivolous or for delay."[52] An appeal is frivolous if it "is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law."[53] An appeal is "interposed for the purpose of delay" if it is "interposed for any improper purpose such as to harass, cause needless increase in the cost of litigation, or gain time that will benefit only the party filing the appeal."[54]
¶ 45 The Adoptive Parents argue that the Nation's track record before the juvenile court and on appeal
has been one of delay, failure to follow proper rules and procedures, and the submission of frivolous arguments in an ill-fated too-little-too-late effort to challenge the placement of the Minor Children into DCFS foster care and their successful adoption into a stable and loving home.
The Adoptive Parents also argue that this appeal and other attempts to challenge these proceedings "are not grounded in fact, are not warranted by existing law, or based on a good faith argument to extend, modify, or reverse existing law."
¶ 46 The Nation counters that tribal sovereign immunity bars an award of attorney fees. The Nation also argues that this appeal is not frivolous because it "is grounded in fact, warranted and supported by existing law, and is based in good faith." The Nation explains that the decision in this case is important because case law on ICWA that pertains to the circumstances presented on appeal is lacking and because "[a]ll of the parties indicated a request for oral argument and published opinion" should this court reach the merits of the case. The Nation also argues that its brief "puts forth several justiciable questions and contains extensive legal citation and analysis of the law intertwined with the facts of this case." As support that the appeal was not intended to cause delay, the Nation explains that "[w]hen a Navajo child is removed from its parent and placed into DCFS care, the Nation's policy is not to immediately intervene and request jurisdiction of the case" because "[i]mmediate intervention and removal of the child to tribal land would interfere with any hope of reunification of the child with the parent." The Nation also posits that its efforts *724 "to preserve Indian families" are "similar to the purpose of ICWA."
¶ 47 We need not address the issue of tribal sovereign immunity. Rather, we hold that the Nation's appeal is neither frivolous nor interposed for the purpose of delay. First, this appeal is not frivolous. As the Nation correctly notes, there is little case law that pertains to the issues on appeal. Indeed, this appeal presents two issues of first impression related to this court's jurisdiction. Furthermore, the Nation made a good faith argument with proper legal citations to extend or modify existing law related to ICWA. Second, there is no evidence that the purpose of this appeal was to harass the appellees, needlessly increase the costs of litigation, or gain time to benefit the Nation. Rather, the Nation contends that it delayed intervention and appeal in this case in order to avoid interfering "with any hope of reunification of the child with the parent." Although the wisdom of this course of action is debatable, we cannot say that it was pursued for delay. We therefore deny the Adoptive Parents' request for attorney fees and costs under rule 33.

CONCLUSION
¶ 48 We hold that Utah's notice of appeal requirements are not preempted by ICWA and that those requirements apply to Indian tribes. Because the Nation did not timely file a notice of appeal that contained its signature, we are required to dismiss this appeal for lack of jurisdiction. We also deny the Adoptive Parents' request for attorney fees and costs.
¶ 49 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Justice PARRISH concur in Justice NEHRING's opinion.
¶ 50 Justice WILKINS sat for oral argument. Due to his retirement from this court, however, he does not participate in this opinion.
NOTES
[1] See State v. Holland, 921 P.2d 430, 431 (Utah 1996) (reciting only the facts pertinent to the issues on appeal).
[2] As noted above, Ms. Tsosie gave birth to D.T. on December 28, 2005.
[3] There is some confusion as to whether Lorene VanWinkle is the children's grandmother or maternal great aunt. Because she self-identifies as the children's grandmother and the juvenile court refers to her as the children's grandmother, we likewise refer to Lorene VanWinkle as the children's grandmother.
[4] As with Lorene VanWinkle, there is confusion as to whether Laurie VanWinkle is the children's aunt or cousin. Because Laurie self-identifies as the children's aunt and the juvenile court refers to her as the children's aunt, we likewise refer to Laurie VanWinkle as the children's aunt.
[5] (Emphases added.)
[6] See Utah Code Ann. § 78A-6-1109(2) (2008) ("Appeals of right from juvenile court orders related to . . . adoption proceedings, shall be taken within 15 days from entry of the order . . . appealed from. In addition, the notice of appeal must be signed by appellant's counsel, if any, and by appellant, unless the appellant is a child or state agency. If an appellant fails to timely sign a notice of appeal, the appeal shall be dismissed."); see also Utah R.App. P. 52(a) ("A notice of appeal from an order in a child welfare proceeding . . . must be field within 15 days of the entry of the order appealed from."); Utah R.App. P. 53(b) ("The notice of appeal must be signed by appellant's counsel and by appellant, unless the appellant is a minor child or state agency.").
[7] Utah R.App. P. 53(b) ("Counsel filing a notice of appeal without appellant's signature shall contemporaneously file, with the clerk of the juvenile court, a certification that substantially complies with the Counsel's Certification of Diligent Search form that accompanies these rules. An amended notice of appeal adding appellant's signature shall be filed within 15 days of the filing of the notice of appeal or the appeal shall be dismissed.").
[8] Utah Code Ann. § 78A-6-1109(2).
[9] See Utah Code Ann. § 78A-6-1109(2); Utah R.App. P. 52(a), 53(b).
[10] See Brown v. Div. of Water Rights, 2010 UT 14, ¶ 13, 228 P.3d 747.
[11] See Utah R. Civ. P. 12(h)(2) ("[W]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); see also K.L. v. C.L. (In re J.J.L.), 2005 UT App 322, ¶ 6, 119 P.3d 315 (per curiam).
[12] See Utah Div. of Consumer Prot. v. Flagship Capital, 2005 UT 76, ¶¶ 4-6, 125 P.3d 894; Harmon City, Inc. v. Nielsen & Senior, 907 P.2d 1162, 1167 (Utah 1995); Hobbs v. Labor Comm'n, 1999 UT App 308, ¶ 7, 991 P.2d 590.
[13] Section 78-3a-305(3) has been renumbered to Utah Code Ann. § 78A-6-304 (2008).
[14] See Utah Code Ann. § 78A-6-1109(2) (2008); Utah R.App. P. 52(a), f 53(b).
[15] Because we dismiss this appeal for lack of jurisdiction, we do not reach the appellees' argument that the Nation does not have standing to appeal the adoption proceeding. Similarly, we need not address whether the Nation's failure to timely file its petition on appeal (as opposed to its notice of appeal) was a jurisdictional failure.
[16] See English v. Gen. Elec. Co., 496 U.S. 72, 78-79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); see also Utah Dep't of Human Servs. v. Hughes, 2007 UT 30, ¶ 22, 156 P.3d 820. Although we only identified two types of federal preemption in Hughes  express and implied  we explained that implied preemption involves "field preemption" and "conflict preemption." See Hughes, 2007 UT 30, ¶ 22, 156 P.3d 820. Thus, we address all three preemption categories here.
[17] In re Adoption of Halloway, 732 P.2d 962, 967 (Utah 1986) (quoting New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 334, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983)).
[18] See 25 U.S.C. § 1921 (2006) ("In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this title [25 USCS §§ 1911-1923], the State or Federal Court shall apply the State or Federal standard.").
[19] Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 486 (10th Cir.1998); see also English, 496 U.S. at 78-79, 110 S.Ct. 2270.
[20] See Hughes, 2007 UT 30, ¶ 24, 156 P.3d 820 (quoting Utah Div. of Consumer Prot. v. Flagship Capital, 2005 UT 76, ¶ 13, 125 P.3d 894).
[21] See 25 U.S.C. § 1911(b) (recognizing the validity of "[s]tate court proceeding[s] for the foster care placement of, or termination of parental rights to, an Indian child.").
[22] Flagship Capital, 2005 UT 76, ¶ 12, 125 P.3d 894 ("The United States Supreme Court has found [express] preemption in only two circumstances: certain causes of action under the Labor Management Relations Act of 1947 and the Employee Retirement Income Security Act of 1974 (ERISA)." (citations omitted)).
[23] Hughes, 2007 UT 30, ¶ 22, 156 P.3d 820 (quoting Flagship Capital, 2005 UT 76, ¶ 11, 125 P.3d 894).
[24] Id. ¶ 26 (alteration in original) (quoting English, 496 U.S. at 79, 110 S.Ct. 2270).
[25] See, e.g., 25 U.S.C. § 1911(b)-(c) (recognizing the validity of "[s]tate court proceeding[s] for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe").
[26] Id. § 1902 (emphasis added).
[27] See, e.g., In re Adoption of Erin G., 140 P.3d 886, 889-90 (Alaska 2006) (applying state statutes of limitations in an appeal from a state child adoption case involving Indian children); In re Adoption of T.N.F., 781 P.2d 973, 978-79 (Alaska 1989) (concluding that Congress intended for state statutes of limitations to apply in actions brought under section 1914 of ICWA); Sonoma Cnty. Human Servs. Dep't v. Evita H. (In re Brandon M.), 54 Cal.App.4th 1387, 63 Cal.Rptr.2d 671, 677 (1997) ("[I]t simply cannot be maintained that the ICWA in any way, manner, shape or form `occupies the field' of child custody or adoption, even as to Indian children. . . . ICWA is totally devoid of any provisions dealing with, e.g., the bases on which a child may be removed from a parent's custody, when and how often hearings must be held to review a child's status, who is entitled to what reunification services and for how long, or many, many other similar issues."); In re J.D.B., 584 N.W.2d 577, 581 (Iowa Ct.App.1998) ("[W]e find nothing in ICWA which expressly or impliedly preempts a state's error preservation rules."); A.D.T. v. State (State ex rel. C.D.), 2008 UT App 477, ¶ 14, 200 P.3d 194 ("So long as the intent of the ICWA is preserved and [its] core protections are satisfied, the underlying procedural framework has been left to the states.").
[28] See 25 U.S.C. §§ 1902-15; Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989).
[29] See State ex rel. C.D., 2008 UT App 477, ¶ 14, 200 P.3d 194.
[30] Hughes, 2007 UT 30, ¶ 25, 156 P.3d 820 (internal quotation marks omitted).
[31] See Navajo Nation v. Superior Court, 47 F.Supp.2d 1233, 1237-38 (E.D.Wash. 1999) (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)) (conducting a plain-language analysis of ICWA).
[32] 25 U.S.C. § 1914 (emphasis added).
[33] Id.
[34] Utah Code Ann. § 78A-6-1109(1).
[35] Id. § 78A-6-1109(2); see also Utah R.App. P. 52(a), 53(b).
[36] 25 U.S.C. § 1914.
[37] See id. § 1921 ("In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this title [25 USCS §§ 1911-1923], the State or Federal court shall apply the State or Federal standard.").
[38] Halloway, 732 P.2d at 967 (quoting New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 334, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983)).
[39] Id. at 967-68 (emphasis omitted) (quoting Mescalero Apache Tribe, 462 U.S. at 334, 103 S.Ct. 2378).
[40] See 25 U.S.C. § 1902; Halloway, 732 P.2d at 968.
[41] See 25 U.S.C. § 1914.
[42] See Utah Code Ann. § 78A-6-1109; Utah R.App. P. 52(a), 53(b).
[43] See 25 U.S.C. § 1914.
[44] See Utah Code Ann. § 78A-6-1109(1); Utah R.App. P. 52(a), 53(b).
[45] See State v. C.A. (State ex rel. S.L.), 1999 UT App 390, ¶ 42, 995 P.2d 17 ("[The] overarching purpose [of Utah's child welfare laws] is to provide stability and permanency for abused and neglected children, and to end the `legal limbo' of state custody as quickly as possible. To that end, the Legislature has crafted specific time lines . . . to prevent a child from languishing indefinitely in foster care." (third alteration in original) (internal quotation marks omitted)).
[46] 25 U.S.C. § 1902.
[47] See Utah Code Ann. §§ 78A-6-1109 (3)-(4) (2008).
[48] J.R. v. State (State ex rel. D.E.), 2006 UT App 391, ¶ 6 n. 1, 147 P.3d 462 (per curiam).
[49] According to the BIA guidelines,

[a]lthough [ICWA] does not explicitly require transfer petitions to be timely, it does authorize the court to refuse to transfer a case for good cause. When a party who could have petitioned earlier waits until the case is almost complete to ask that it be transferred to another court and retried, good cause exists to deny the request.
Timeliness is a proven weapon of the courts against disruption caused by negligence or obstructionist tactics on the part of counsel. If a transfer petition must be honored at any point before judgment, a party could wait to see how the trial is going in state court and then obtain another trial if it appears the other side will win. Delaying a transfer request could be used as a tactic to wear down the other side by requiring the case to be tried twice. [ICWA] was not intended to authorize such tactics and the "good cause" provision is ample authority for the court to prevent them.
Bureau of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,590 (Nov. 26, 1979) (emphases added). Although the BIA Guidelines "are not intended to have binding legislative effect," we include them here because they "represent the interpretation of the Interior Department" and are intended to "help assure that rights guaranteed by [ICWA] are protected when state courts decide Indian child custody matters." Id. at 67,584.
[50] See Utah Code Ann. § 78A-6-1109(2)("If an appellant fails to timely sign a notice of appeal, the appeal shall be dismissed." (emphasis added)); Utah R.App. P. 52(a), 53(b) ("An amended notice of appeal adding appellant's signature shall be filed within 15 days of the filing of the notice of appeal or the appeal shall be dismissed." (emphasis added)); see also State ex rel. D.E., 2006 UT App 391, ¶¶ 1-7, 147 P.3d 462 (dismissing the appeal of an order terminating appellant's parental rights for lack of jurisdiction because the appellant did not sign the original notice of appeal, appellant's counsel did not file a certification of diligent search with the notice of appeal, and the amended notice of appeal was filed twenty days after the juvenile court's order was entered); K.L. v. C.L. (In re J.J.L.), 2005 UT App 322-6, 119 P.3d 315 (per curiam) (dismissing for lack of jurisdiction where "[t]he original notice of appeal, signed only by counsel, was untimely under rule 52 and was not accompanied by the certificate of diligent search required by rule 53"); C.F. v. State (State ex rel. A.M.), 2005 UT App 2, ¶¶ 5-7, 106 P.3d 193 (per curiam) (dismissing for lack of jurisdiction where the notice of appeal was filed more than fifteen days after the trial court's permanency order).
[51] Because the juvenile court has granted the non-Indian foster parents' petition for adoption, we refer to them as the adoptive parents in this section.
[52] Utah R.App. P. 33(a).
[53] Utah R.App. P. 33(b).
[54] Id.