WINFREE, Justice,
dissenting.
I respectfully disagree with today's decision. In my view the court overstates the United States Supreme Court's holding in Adoptive Couple v. Baby Girl (Baby Girl)[1] and understates the nature of the underlying adoptive placement proceeding in this case, discussed at some length in Native Village of Tununak v. State, Department of Health & Social Services, Office of Children's Services (Tununal I )[2]
Baby Girl arose from a state court private adoption proceeding where: (1) the Indian father abandoned the child before birth; (2) the non-Indian mother found an appropriate couple willing to adopt the child; and (8) the state's statutes provided that under these cireumstances the father's parental rights could be terminated and the adoption completed.[3] But the father contested the termination of his parental rights and the adoption, arguing that because the child was an Indian child under the Indian Child Welfare Act (ICWA)[4] he was entitled to ICWA's protections against the termination of his parental rights.[5]
Because the case involved only the termination of the father's parental rights, the focus of the Supreme Court's decision was on ICWA §§ 1912(d) and (£), neither of which is at issue in this case. The Court first addressed $ 1912(f), noting that it
*179 provides that "[njo termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, ... that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." [6]
The Court held that § 1912(f) was inapplicable because the father never had legal or physical custody of the child,[7] and noted that ICWA's protections were not applicable: "In sum, when, as here, the adoption of an Indian child is voluntarily and lawfully initiated by a non-Indian parent with sole custodial rights, the ICWA's primary goal of preventing the unwarranted removal of Indian children and the dissolution of Indian families is not implicated." [8]
The Court next addressed § 1912(d), noting it "provides that '[alny party' seeking to terminate parental rights to an Indian child under state law 'shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian fomily and that these efforts have proved unsuceessful.' "[9] The Court held that § 1912(d) was inapplicable because the father had abandoned the child and there was no family unit to protect:
[WJe hold that $ 1912(d) applies only in cases where an Indian family's breakup would be precipitated by the termination of the parent's rights The term breakup refers in this context to the discontinuance of a relationship, or an ending as an effective entity. But when an Indian parent abandons an Indian child prior to birth and that child has never been in the Indian parent's legal or physical custody, there is no relationship that would be discontinued-and no effective entity that would be ended-by the termination of the Indian parent's rights. In such a situation, the breakup of the Indian family has long since occurred, and § 1912(d) is inapplicable.[10]
The Court then addressed the state court's dicta-that even if the father's parental rights were properly terminated, § 1915(a)'s adoptive placement preferences still would apply-with its own dicta:[11]
In the decision below, the [state court] suggested that if it had terminated Biological Father's rights, then § 1915(a)'s preferences for the adoptive placement of an Indian child would have been applicable....
Section 1915(a) provides that "[iln any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (8) other Indian families." [But] § 1915(a)'s preferences are inapplicable in cases where no alternative party has formally sought to adopt the child. This is because there simply is no "preference" to apply if no alternative party that is eligible to be preferred under § 1915(a) has come forward.! [12]
The Court noted that the father had been contesting the termination of his parental rights rather than seeking to adopt the child, that the paternal grandparents had not sought custody of the child, and that the tribe had not presented any tribal member seeking to adopt the child.[13] Thus, no one with a § 1915(a) preference had "come forward" to adopt the child.[14]
From this, today the court interprets the Supreme Court as requiring that "with re *180 spect to adoptive placements for an Indian child under state law," [15] a formal state court adoption petition, or a formal "proxy," must be filed before a person will be considered for adoptive placement preference under § 1915(a).[16] But in my view: (1) the Supreme Court imposed no such requirement, which would impliedly preempt state adoption procedures; [17] (2) as this case amply demonstrates, such a requirement elevates form over substance; and (8) such a requirement in the context of this case flies in the face of ICWA's express purpose.
The Supreme Court made no holding about § 1915(a),[18] but observed that § 1915(a) does not apply when no eligible person "has formally sought to adopt the child ... because there simply is no 'preference' to apply if no alternative party that is eligible to be preferred under § 1915(a) has come forward."[19] The Court's initial overview of its decision stated it was clarifying that § 1915(a) preferences are inapplicable if no eligible candidates "have sought to adopt the child," without using the word "formally." [20] The Court did not hold that whether an eligible candidate has come forward is a matter of federal law. And it certainly did not hold as a matter of federal law that § 1915(a) can apply only when an eligible person has filed an adoption petition in state court.[21]
Yet today the court asserts that state courts are constrained by the Supreme Court's decision and now can apply § 1915(a) preferences only when competing state court adoption petitions exist. It is not at all self-evident that this is what the Supreme Court meant,[22] and it is even less self-evident that *181 the Supreme Court impliedly created a monolithic federal rule trumping state court adoption procedures. The Court's clarification certainly leaves room for states to determine under their own adoption procedures when an eligible candidate has come forward such that the preferences should be applied.[23] Baby Girl does not compel today's result; today's result comes directly from this court and imposes a new state-law barrier to § 1915(a)'s adoption placement preferences.[24]
It is self-evident that if no one eligible and suitable for a § 1915(a) adoptive placement preference comes forward to adopt an Indian child, there can be no preferred adoptive placement.[25] This is not a particularly novel understanding; it was precisely the factual situation in Baby Girl, and the Supreme Court's language should not be read to suggest anything more. We described the eligibility-suitability determination process in Tu-nunal I:
[BlJefore determining whether good cause exists to deviate from the placement preferences, a court must first inquire as to whether any suitable preferred placements exist.
The "preferred placement" inquiry requires a court to apply the statutory framework and follow the tiered order of preference mandated by ICWA, le., give preference first to a member of the child's extended family, then to other members of the Indian child's tribe, and then to other Indian families. This does not end the inquiry, however, as the court must also assess the suitability of each prospective placement if a party alleges that a preferred placement is unsuitable. In other words, the court must determine not only that a placement is preferred, but also that *182 the placement would be a suitable caretaker for the child.[26]
But after today's decision, it does not appear that a trial court has to make any inquiry about preferential adoptive placement unless an eligible person actually files an adoption petition.[27] And now, when multiple relatives in a village might consider adopting a child after a termination of parental rights, they cannot simply participate in adoptive placement proceedings in the child in need of aid case to determine who is eligible and suitable, but rather must file separate and competing formal adoption petitions.
The tribe makes a persuasive argument that requiring a state court adoption petition to trigger § 1915(a)'s adoptive placement preferences will have disastrous results for Alaska's rural Natives. In many villages the court system has no presence and legal representation is nonexistent. Village relatives who might seek to adopt have little way of knowing when a child has been freed for adoption in an urban child in need of aid court proceeding, or whether a non-Indian foster family has filed an adoption petition. In my view § 1915(a) placement preferences should, at the very least, apply when a person seeks adoptive placement in a child in need of aid proceeding. I see no good reason for requiring a state court adoption petition to trigger ICWA's preferences, and if seeking adoptive placement in a child in need of aid proceeding is not a "proxy" to such a petition, what is?
In Tununak I we expressly stated that the adoptive placement proceeding in this case was to determine whether Dawn would be adopted by her grandmother in the village or by her foster parents in Anchorage: "even though the placement determination took place in the context of a CINA proceeding, it is clear that the parties were essentially contesting-and the superior court was essentially determining-adoptive placement for Dawn." [28] Our decision's very substance was how to apply Alaska Adoption Rule 11, which we said applied to the proceeding.[29] And just six months later we expressed that "it was clear in [Tununak I] that the issue being contested at the placement review hearing was the child's placement for adoption." [30] But now the court says the grandmother's effort to obtain preferential adoptive placement-in what we said was an adoption proceeding-was not an effort to *183 "formally" adopt Dawn because she did not file formal adoption paperwork.[31] This adherence to form over substance, especially in an ICWA context, is untenable.
Unlike in Baby Girl, where the Supreme Court took great pains showing otherwise when analyzing the two ICWA termination provisions at issue, ICWA's purpose is squarely implicated in this case. As the court notes, Dawn's biological parents are Alaska Natives. Rather than a termination of parental rights through a private adoption arranged by a non-Indian parent after an Indian parent abandoned the child, this was a state-sponsored parental rights termination and a state-sponsored adoptive placement clearly subject to ICWA.[32] And here the tribe and maternal grandmother actively sought adoptive placement with the grandmother so the child could live in the village with tribal members.[33] This case compels the application of § 1915(a)'s adoptive placement preferences, and if it does not, it is clear that ICWA is not working the way it should in Alaska.[34]
This case should be remanded to the superior court for a renewed adoption placement hearing, as we contemplated in Tununak I.[35] If Dawn's grandmother is a suitable adoptive placement, then, in light of § 1915(a) and absent good cause to deviate from its prefer-enees,[36] the current adoption should be vacated and Dawn should be placed with her grandmother for eventual tribal or state court adoption.
I dissent.

. - U.S. -, 133 S.Ct. 2552, 186 L.Ed.2d 729 (2013).

. 303 P.3d 431 (Alaska 2013).

. 133 S.Ct. at 2558-59; Adoptive Couple v. Baby Girl (Adoptive Couple), 398 S.C.625, 731 S.E.2d 550, 553-56, 561 (2012), rev'd, - U.S. -, 133 S.Ct. 2552, 186 L.Ed.2d 729.

. 25 U.S.C. §§ 1901-1963 (2012).

. Baby Girl, 133 S.Ct. at 2559; Adoptive Couple, 731 $.E.2d at 555-56.

. Baby Girl, 133 S.Ct. at 2560 (alteration and emphasis in original).

. Id. at 2562.

. Id. at 2561.

. Id. at 2562 (alteration and emphasis in original).

. Id. (alterations, citations, and internal quotation marks omitted).

. See id. at 2557 (stating §§ 1912(F) and (d) rulings were holdings, but stating § 1915(a) discussion was clarification to state court).

. Id. at 2564 (citation omitted).

. Id.

. Id.

. Id. at 2558 (emphasis added).

. It is undisputed that in this case the grandmother did not file a state court adoption petition. The court notes the grandmother's testimony that she had petitioned for placement and adoption, and then notes there is no such petition in the state court. But the grandmother was not asked whether she was referring to paperwork filed in state court or tribal court, or even whether it was paperwork given to the Office of Children's Services. When the grandmother testified during the adoption placement hearing, the adoption petition question was a side-issue directed to whether she truly wanted to adopt. Because the record for this appeal was created well before a formal adoption petition requirement became an issue, the record before us does not reveal to what the grandmother was referring in her testimony; it may be the "proxy" for a state court adoption petition that the court says is missing in this case.

. Cf. In re Brandon M., 54 Cal.App.4th 1387, 63 Cal.Rptr.2d 671, 677-78 (1997) ("Congress clearly intended that [ICWA] exist side-by-side with the child custody laws of the 50 states and necessarily understood that the courts of those states would and should attempt to harmonize, not presume conflicts between, the two."); In re Adoption of A.B., 245 P.3d 711, 719 (Utah 2010) ("So long as [ICWA's] core protections are honored and the intent of ICWA is preserved, states may fashion the underlying procedural framework.").

. The court today asserts that I am mistaken on this point, concluding that the Supreme Court's decision about § 1915(a) constitutes a "holding." I prefer to rely on the Supreme Court's own statements about its decision:
[We hold that 25 U.S.C. § 1912(F) ... does not apply when, as here, the relevant parent never had custody of the child. We further hold that § 1912(d) ... is inapplicable when, as here, the parent abandoned the Indian child before birth and never had custody of the child. Finally, we clarify that § 1915(a) ... does not bar a non-Indian family ... from adopting an Indian child when no other eligible candidates have sought to adopt the child.
Baby Girl, 133 S.Ct. at 2557 (emphasis added). I might agree with the court's conclusion had Baby Girl actually involved the application of § 1915(a)'s adoption placement preferences, even in part. But it did not-the questions actually presented and decided were whether §§ 1915(d) and (f) applied to the statutory parental rights termination in the state court. I do not reject the notion that clarification of a holding can itself be a holding; that is not the case here.

. Id. at 2564.

. Id. at 2557.

. Cf id.

. At least one state practice guide does not read Baby Girl to mean an adoption petition must be filed. In Nebraska, the Juvenile Court Law and Practice guide cautions practitioners that Baby Girl "eliminates the need for a party to demonstrate good cause to depart from the ICWA adoptive-placement preferences, where no one described in those statutorily-designated preferences has stepped forward to formally assert an intent to acquire custody of, or to adopt the child." CHristne P. Costanrakos, Juvenice Court Law & Practice § 13:12 (2013) (emphasis added). The practice guide merely directs that, "[Flor practitioners representing a parent of an Indian *181 child who wants assurance that his or her child will be placed with another family or tribal member if adoption is needed, the lesson is clear: identify early on any family members, relatives, or tribal members who are willing and desirous of custody and take proper steps to formally convey their intentions to the court in this regard." Id. (emphasis added). This approach makes abundant sense to me.

. Cf. Baby Girl, 133 S.Ct. at 2558 (noting that the § 1915(a) preferences apply "with respect to adoptive placements for an Indian child under state law" (emphasis added)); In re Adoption of A.B., 245 P.3d 711, 719 (Utah 2010) (noting "states may fashion the underlying procedural framework" for applying ICWA's substantive standards); State ex rel. C.D., 200 P.3d 194, 209 (Utah App.2008) (noting "there are no express statutory provisions declaring [the procedure for} complying] with the ICWA's placement preferences").
In fact, on remand of Baby Girl, the state court applied its own adoption law in determining whether newly filed competing adoption petitions in the case were eligible for § 1915(a) preferences; the court held the petitions were ineligible because the "litigation must have finality, and it is the role of this court to ensure 'the sanctity of the adoption process' under state law is 'jealously guarded.'" Adoptive Couple v. Baby Girl (Adoptive Couple II), 404 S.C.483, 746 S.E.2d 51, 53 (2013) (emphasis added) (quoting Gardner v. Baby Edward, 288 S.C. 332, 342 S.E.2d 601, 603 (S.C.1986)).

. Cf. Miss. Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 36-37, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (stating placement preferences are "[the most important substantive requirement imposed on state courts"); Josh L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs., 276 P.3d 457, 465 (Alaska 2012) ('We recognize that the placement preferences under section 1915 are critical to ICWA's goal of promoting the stability and security of Indian tribes and families."); In re Adoption of Sara J., 123 P.3d 1017, 1024 (Alaska 2005) (stating § 1915(a) established federal policy that " 'where possible, an Indian child should remain in the Indian community' " (quoting H.R.Rep. No. 95-1386, at 23, reprinted in 1978 U.S.C.C.A.N. 7530, 7546)).

. As we explained in In re Adoption of Sara J.:
[Although it is correct that the word "preference" generally connotes a choice between two options, we read ICWA's structure and purpose to preclude choosing between preferred and non-preferred placements if the preferred placement is "suitable," as measured by the prevailing social and cultural standards of the Indian community. The existence of a suitable preferred placement precludes any consideration of a non-preferred placement unless good cause exists, for example, because another preference has been expressed by the child or the child's biological parents, or because the child has special needs that cannot be met by an otherwise-suitable preferred placement.
123 P.3d at 1028 (emphasis in original) (citation omitted); see also Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67,584, 67,594 (Nov. 26, 1979) (stating one good cause factor for deviation from § 1915(a) is "[the unavailability of suitable families for placement after a diligent search has been completed for families meeting the preference criteria").

. 303 P.3d 431, 450 (Alaska 2013) (citations omitted).

. Cf. CINA Rule 10.1(b) (requiring continuing court inquiry regarding compliance with § 1915(b)'s placement preferences prior to termination of parental rights). The CINA rules do not explicitly require such an inquiry for an adoptive placement.
One can only wonder about the impact of today's decision on the State's duties regarding § 1915(a)'s placement preferences. We have not had occasion to consider the exact contours of the State's duty to search for eligible preferred adoptive placements and assist such parties in coming forward. The Bureau of Indian Affairs Guidelines assume that a "diligent search" will be made for a preferred adoptive placement and that an unsuccessful search will be good cause to deviate from § 1915(a)'s mandated preference list. Guidelines for State Courts, Indian Child Custody Proceedings, 44 Fed.Reg. at 67,594. And § 1915(e) requires the State to document its "efforts to comply with the order of preference specified in [§ 1915]." I have previously expressed the view that the State has an affirmative duty to effectuate placement preferences when possible. Josh L., 276 P.3d at 472 (Winfree, J., dissenting). Today's decision presents interesting questions about the State's duties. Does the State have a duty to seek out and advise those eligible for a § 1915(a) preference that a state court adoption petition must be filed before they will be considered? And what if, as is the case here, the State simply does not want an eligible person under § 1915(a) to have an adoptive placement preference? Can the State stand behind its view that the grandmother was not "suitable" and it therefore had no duty to assist her with an adoption petition? Or did the State breach its duty to the grandmother and the Tribe? The Tribe's concern that requiring an adoption petition for consideration under § 1915(a) will lead to a lesser effort by the State to effectuate § 1915(a) is not unfounded.

. 303 P.3d at 443.

. Id. at 433, 443-44.

. Irma E. v. State, Dep't of Health & Soc. Servs., 312 P.3d 850, 855 (Alaska 2013) (citing Tununak I, 303 P.3d at 439-40) (noting that in CL. v. P.C.S., 17 P.3d 769, 772 (Alaska 2001), foster care placement changed into adoptive placement when superior court terminated parents' parental rights and children's foster parents filed petitions to adopt the children).

. The court suggests the grandmother's participation in the adoptive placement proceeding did. not rise to the level of "formally [seeking] to adopt" because, comparing her efforts to those of the biological father in Baby Girl, the father's "much higher level of involvement" in the adoption proceedings was still insufficient to constitute a formal adoption effort. This comparison is inapt: the Supreme Court concluded the biological father "did not seek to adopt Baby Girl" because he instead sought to prevent termination of his parental rights, not because his efforts were not sufficiently formal. Baby Girl, 133 S.Ct. 2552, 2559 (2013).

. Like Baby Girl, this case "concerns a 'child custody proceeding," which ICWA defines to include proceedings that involve 'termination of parental rights' and 'adoptive placement.' " Id. at 2557 n. 1 (citing 25 U.S.C. § 1903(1)).

. Cf. id at 2565 (stating that ICWA "was enact ed to help preserve the cultural identity and heritage of Indian tribes"); see also In re Adoption of Sara J., 123 P.3d 1017, 1024 (Alaska 2005) (stating § 1915(a) established federal policy that " 'where possible, an Indian child should remain in the Indian community'" (quoting H.R.Rep. No. 95-1386, at 23, reprinted in 1978 U.S.C.C.A.N. 7530, 7546)).

. Time and time again we see CINA cases involving village children placed in urban foster homes while their parents work to meet the conditions for regaining custody; if the parents ultimately fail, the children rarely return to the village but rather are adopted, often by the foster parents, and remain in urban centers. This case is yet another example.

. 303 P.3d 431, 453 (Alaska 2013).

. Cf. id. at 451-53 (discussing factors relevant to good cause to deviate from § 1915(a)'s placement preferences).