746 S.E.2d 51

ADOPTIVE COUPLE, Appellants,

v.

BABY GIRL, a minor child under the age of fourteen years, Birth Father, and the Cherokee Nation, Respondents.

Appellate Case No. 2011–205166.

No. 2011–205166.

Supreme Court of South Carolina.

July 17, 2013.

484

## ORDER

This case reaches this Court again from the decision of the Supreme Court of the United States, reversing our prior decision, *Adoptive Couple v. Baby Girl*, 398 S.C. 625, 731 S.E.2d 550 (2012), and remanding the case for further proceedings "not inconsistent with" its opinion. *Adoptive Couple v. Baby Girl*, 570 U.S. ——, ——, 133 S.Ct. 2552, 2565, 186 L.Ed.2d 729 (2013). On June 28, 2013, the Supreme Court expedited the issuance of the mandate, which transferred jurisdiction to this Court on July 5, 2013.[1] *See Adoptive Couple v. Baby Girl*, No. 12–399 (U.S. June 28, 2013) (order expediting mandate issuance). On July 3, 2013, the Respondent Birth Father (Birth Father) filed a Motion to Remand this case to the Family Court to address the matter *de novo* with explicit instructions regarding how to proceed. An Emergency Motion for Final Order Following Remand with this Court filed by Appellants (Adoptive Couple) followed, along with a petition to appear as arnica curiae filed by Birth Mother.[2] On July 8, 2013, Adoptive Couple filed a Return to

1. Despite our understanding that numerous petitions for adoption have been filed in Oklahoma and the Cherokee Tribal Court, we retain jurisdiction to finally resolve Baby Girl's adoption in the courts of South Carolina by virtue of the Supreme Court's transfer of jurisdiction to this Court. We note further that an Oklahoma court already declined to exercise jurisdiction in this case. *See Adoptive Couple v. Baby Girl*, 398 S.C. at 643–44, 731 S.E.2d at 559. Moreover, the adoption has been pending in South Carolina since Adoptive Couple instituted the proceedings. *See Knoth v. Knoth*, 297 S.C. 460, 464, 377 S.E.2d 340, 342–43 (1989) (stating "once a custody decree has been entered, the continuing jurisdiction of the decree state is exclusive" and "[e]xclusive continuing jurisdiction is not affected by the child's residence in another state" (citations omitted)).

2. We granted Birth Mother's request on July 8.

Birth Father's Motion to Remand.[3] On July 12, 2013, Respondent Cherokee Nation notified this Court via letter that it was joining Birth Father's request to remand this case to the Family Court.[4]

In his Motion to Remand, Birth Father raises a number of "new" issues he claims should be resolved by the Family Court in this case, in particular: "(1) [whether] the case should be transferred to Oklahoma where Baby Girl has lived for 18 months, where the relevant witnesses are all located, and where competing adoption petitions are pending; (2) whether, on the current record, [Birth] Father's parental rights may be terminated, or whether it is in Baby Girl's best interest[s] for her to remain with the natural parent who has cared for her and with whom she has bonded over those 18 months; and (3) whether, in light of the competing adoption petitions, the ICWA placement preferences preclude adoption of Baby Girl by the self-styled Adoptive Couple." We deny Birth Father's motion in its entirety. Because we can resolve the issues of law here, nothing would be accomplished by a *de novo* hearing in the Family Court, except further delay and heartache for all involved—especially Baby Girl.

A majority of the Supreme Court has cleared the way for this Court to finalize Adoptive Couple's adoption of Baby Girl. In denying Adoptive Couple's petition for adoption and awarding custody to Birth Father, we held that Birth Father's parental rights could not be terminated under the federal Indian Child Welfare Act, 25 U.S.C. §§ 1901–23 (the ICWA). *See Adoptive Couple v. Baby Girl*, 398 S.C. at 644, 731 S.E.2d at 560. The Supreme Court has unequivocally found that the ICWA does not mandate custody be awarded to Birth Father, thereby reversing our previous holding:

> Contrary to the State Supreme Court's ruling, we hold that 25 U.S.C. § 1912(f)—which bars involuntary termination of a parent's rights in the absence of a heightened showing that serious harm to the Indian child is likely to result from

---

3. Likewise, counsel for the Guardian *ad litem* filed a responsive brief on July 8.

4. On July 15, 2013, Birth Father filed a Return to Adoptive Couple's Emergency Motion for Final Order and a Reply to Adoptive Couple's Return to Motion to Remand.

the parent's "continued custody" of the child—does not apply when, as here, the relevant parent never had custody of the child. We further hold that § 1912(d)—which conditions involuntary termination of parental rights with respect to an Indian child on a showing that remedial efforts have been made to prevent the "breakup of the Indian family"— is inapplicable when, as here, the parent abandoned the Indian child before birth and never had custody of the child. Finally, we clarify that § 1915(a), which provides placement preferences for the adoption of Indian children, does not bar a non-Indian family like Adoptive Couple from adopting an Indian child when no other eligible candidates have sought to adopt the child.

570 U.S. ——, 133 S.Ct. at 2557.

■ The Supreme Court has articulated the federal standard, and its application to this case is clear: the ICWA does not authorize Birth Father's retention of custody. Therefore, we reject Birth Father's argument that § 1915(a)'s placement preferences could be an alternative basis for denying the Adoptive Couple's adoption petition.[5] The Supreme Court majority opinion unequivocally states:

§ 1915(a)'s preferences are inapplicable in cases where no alternative party has formally sought to adopt the child. . . . In this case, Adoptive Couple was the only party that sought to adopt Baby Girl in the Family Court or the South Carolina Supreme Court. [Birth] Father is not covered by § 1915(a) because he did not seek to *adopt* Baby Girl; instead, he argued that his parental rights should not be terminated in the first place. Moreover, Baby Girl's pater-

---

5. In making this argument, Birth Father relies on the following language in Justice Sotomayor's dissent:

[T]he majority does not and cannot foreclose the possibility that on remand, Baby Girl's paternal grandparents or other members of the Cherokee Nation may formally petition for adoption of Baby Girl. If these parties do so, and if on remand . . . [Birth] Father's parental rights are terminated so that an adoption becomes possible, they will then be entitled to consideration under the order of preference established in § 1915. The majority cannot rule prospectively that the § 1915 would not apply to an adoption petition that has not yet been filed.

570 U.S. ——, 133 S.Ct. at 2585 (Sotomayor, J., dissenting) (alterations added).

nal grandparents never sought custody of Baby Girl. Nor did other members of the Cherokee Nation or "other Indian families" seek to adopt Baby Girl, even though the Cherokee Nation had notice of—and intervened in—the adoption proceedings.

570 U.S. ——, 133 S.Ct. at 2564 (emphasis in original) (internal citations and footnotes omitted) (alteration added). As the opinion suggests, at the time Adoptive Couple sought to institute adoption proceedings, they were the only party interested in adopting her. Because no other party has sought adoptive placement in this action, § 1915 has no application in concluding this matter, nor may that section be invoked at the midnight hour to further delay the resolution of this case. We find the clear import of the Supreme Court's majority opinion to foreclose successive § 1915 petitions, for litigation must have finality, and it is the role of this court to ensure "the sanctity of the adoption process" under state law is "jealously guarded." *Gardner v. Baby Edward*, 288 S.C. 332, 334, 342 S.E.2d 601, 603 (1986).

 With the removal of the perceived federal impediment to Adoptive Couple's adoption of Baby Girl, we turn to our state law. In our previous decision, we held that, under state law, Birth Father's consent to the adoption was not required under section 63-9-310(A)(5) of the South Carolina Code. *See Adoptive Couple v. Baby Girl*, 398 S.C. at 643 n. 19, 731 S.E.2d at 560 n. 19 ("Under state law, Father's consent to the adoption would not have been required."). That section provides consent is required of an unwed father of a child placed with the prospective adoptive parents six months or less after the child's birth only if:

(a) the father openly lived with the child or the child's mother for a continuous period of six months immediately preceding the placement of the child for adoption, and the father openly held himself out to be the father of the child during the six months period; or

(b) the father paid a fair and reasonable sum, based on the father's financial ability, for the support of the child or for expenses incurred in connection with the mother's pregnancy or with the birth of the child, including, but not limited to, medical, hospital, and nursing expenses.

S.C.Code Ann. § 63–9–310(A)(5) (2010).[6] Because Birth Father's consent is not required under the statute, we need not turn to our parental termination provision, section 63–7–2570 of the South Carolina Code, to terminate Birth Father's parental rights, as the effect of a final adoption decree will be to automatically terminate any legal or parental right he has with respect to Baby Girl. See S.C.Code Ann. § 63–9–760 (stating the effect of an adoption is, in part, that "the biological parents of the adoptee are relieved of all parental responsibilities and have no rights over the adoptee"); S.C. Dep't of Soc. Servs. v. Parker, 275 S.C. 176, 179, 268 S.E.2d 282, 284 (1980) (noting a father who has no right to object to the adoption is not permitted to "block a termination of his purported parental rights"). Once the final adoption decree is entered, therefore, "the relationship of parent and child and all the rights, duties, and other legal consequences of the natural relationship of parent and child" will exist between Adoptive Couple and Baby Girl. S.C.Code Ann. § 63–9–760(A).

We think the Supreme Court plainly contemplated an expeditious resolution of this case, and we believe the facts of this case require it. There is absolutely no need to compound any suffering that Baby Girl may experience through continued litigation. As it stands, Adoptive Couple is the only party who has a petition pending for the adoption of Baby Girl, and thus, theirs is the only application that should be considered at this stage.

For these reasons, we remand this case to the Family Court for the prompt entry of an order approving and finalizing Adoptive Couple's adoption of Baby Girl, and thereby terminating Birth Father's parental rights, in accordance with section 63–9–750 of the South Carolina Code. Upon the entry of the Family Court's order, custody of Baby Girl shall be transferred to Adoptive Couple. If additional motions are pending or are filed prior to the entry of the order finalizing the adoption, the family court shall promptly dispose of all

---

6. Thus, Birth Mother's consent is the only consent required under the statute, and she gave her consent in accord with the requirements of our adoption provisions. See S.C.Code Ann. §§ 63–9–310(A)(3); 63–9–330; 63–9–340. In fact, in her amica curiae brief, she avers that she will revoke her consent to the adoption of Baby Girl by any other prospective adoptive parents.

such motions and matters so as not to delay the entry of the adoption and the return of Baby Girl to the Adoptive Couple. Further, if any petition for rehearing is to be filed regarding this Order, it shall be served and filed within five (5) days of the date of this Order.

/s/Jean H. Toal, C.J.

/s/John W. Kittredge, J.

/s/Kaye G. Hearn, J.
 FOR THE COURT

I agree that we should remand this matter to the family court for further proceedings consistent with the United States Supreme Court's ruling. As I understand that decision, the Court held that we erred when we held that two provisions of the Indian Child Welfare Act (ICWA)[7] barred the termination of Father's parental rights. *Adoptive Couple v. Baby Girl*, 570 U.S. ——, 133 S.Ct. 2552, 2562, 2563–64, 186 L.Ed.2d 729 (2013). Further, the majority indicated we erred when we suggested that the adoptive preference provisions of ICWA[8] would have been applicable if Father's parental rights had been terminated because, as the Court explained, no person entitled to invoke these statutory preferences was then seeking to adopt the child in the South Carolina proceedings. Nothing in the majority opinion suggests, much less mandates, that this Court is authorized to reject the jurisdiction of other courts based upon a 1989 case deciding jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA),[9] nor obligated to order that the adoption of this child by Adoptive Parents be immediately approved and finalized. Further, the majority orders the immediate transfer of the child, no longer an infant or toddler, upon the filing of the family court's

---

7. 25 U.S.C. §§ 1912(d) and 1912(f).

8. 25 U.S.C. § 1915(a).

9. *Knoth v. Knoth*, 297 S.C. 460, 377 S.E.2d 340 (1989) cited in footnote 1, *supra*. I note that in 2008, the UCCJA was replaced by the Uniform Child Custody Jurisdiction and Enforcement Act, S.C.Code Ann. §§ 63–15–300 *et seq.*, which specifically provides that it "does not govern an adoption proceeding ...." § 63–15–304; *see also* § 63–15–306(A)(ICWA trumps state law concerning custody of an Indian child).

adoption order, without regard to whether such an abrupt transfer would be in the child's best interest.

Much time has passed, and circumstances have changed. I have no doubt that all interested parties wish to have this matter settled as quickly as possible, keeping in mind that what is ultimately at stake is the welfare of a little girl, and that of all who love her. I would remand but I would not order any specific relief at this juncture, as I believe this is a situation where the decisions that are in the best interests of this child, given all that has happened in her short life, must be sorted out in the lower court(s).

/s/Costa M. Pleicones, J.

/s/Donald W. Beatty, J.
 FOR THE COURT